Western Union Telegraph Co. *v.* Fitchburg Gas & Electric Light Co.

THE WESTERN UNION TELEGRAPH COMPANY *vs.* FITCH-
BURG GAS AND ELECTRIC LIGHT COMPANY.

Worcester. May 7, 1956. — October 2, 1956.

Present: WILKINS, C.J., RONAN, SPALDING, & WILLIAMS, JJ.

*Contract,* Of indemnity. *Death.*

The fact that a claim made against and settled by a company was for
death was not a defence to an action by the company against another
company seeking reimbursement of the amount paid in the settlement
and the legal expense thereof pursuant to a contract of indemnity
between the companies. [591–592]
Where the parties to a contract of indemnity made a further agreement
that the indemnitee might settle a certain claim made by a third per-
son against him up to a specified maximum amount and that the
amount of any recovery sought by him against the indemnitor under
the indemnity contract should be the amount paid in the settlement
plus the expense thereof, and the indemnitee thereafter made a "rea-
sonable and prudent" settlement within the specified maximum
amount and incurred reasonable legal expense, it was no defence to
an action by him on the indemnity contract that as matter of law
he had not been liable on and could have successfully defended the
third person's claim. [592]
A contract between a telegraph company and an electric company as
joint owners of a line of poles, providing that each party should "be
solely responsible for its . . . wires and . . . electric currents . . .
and for any damage to persons . . . due solely to its . . . neglect"
and that the electric company should save the telegraph company
harmless from "loss and damage occasioned by the . . . [electric
company's] electric currents or by the . . . maintenance upon said
poles of its wires," was applicable and required such indemnification
on evidence warranting findings that a high voltage wire of the electric
company on the top crossarm of one of the poles became severed
through that company's negligence and fell upon and energized a
previously dead wire of the telegraph company on a lower crossarm,
that, at a point about a mile away where the telegraph company's
wire was carried on poles solely owned by it and was crossed by serv-
ice wires of the electric company leading from one of the poles in a
line different from the jointly owned line of poles, such service wires
through negligence of the electric company sagged upon the telegraph
company's wire and, because it was then energized, caused it to burn,

588                                334 Mass. 587

Western Union Telegraph Co. *v.* Fitchburg Gas & Electric Light Co.

break and fall to the ground, and that one coming in contact with the fallen wire of the telegraph company was electrocuted and the telegraph company incurred expense in disposing of a claim made against it for his death. [592]

CONTRACT. Writ in the Superior Court dated October 22, 1951.

The action was tried before *Paquet,* J. Motions for directed verdicts by the defendant were denied, there were verdicts for the plaintiff, and the defendant alleged exceptions.

*Francis H. George,* for the defendant.

*John P. Dunn,* for the plaintiff.

SPALDING, J. These facts could have been found. About 9:30 on the night of June 8, 1946, Loring Corkum was electrocuted when he came in contact with a wire that had fallen from one of a line of poles maintained by the plaintiff in front of the home of one Sage. The Sage property was located on the north side of Westminster Hill Road, a public way running east and west in Fitchburg. The plaintiff's line of poles was located on the same side of the street as the Sage property, and suspended from crossarms thereon were five transmission lines of the plaintiff. Since April 20, 1946, these wires had been disconnected, so that they carried no electric current for a total distance of about three miles from a point some distance east of the Sage property to a point some distance west of the property of one Godley, which was located on the northerly side of Westminster Hill Road nearly a mile west of the Sage property. Across the road from the Sage property the defendant and the New England Telephone and Telegraph Company, hereinafter called the telephone company, maintained a line of poles running easterly and westerly for some distance. At a point almost opposite the Sage property two service wires of the defendant ran across the road in a northerly direction from one of these poles to the Sage house.

The plaintiff, as successor to the Postal Telegraph and Cable Company, the defendant, and the telephone company jointly owned a line of poles which passed the Godley prop-

erty on the northerly side of Westminster Hill Road.[1] These poles were owned under a common ownership agreement, the pertinent portions of which are set forth in the margin.[2] The poles extended for a short distance east of Godley's property and for some distance to the west. . Supported by these jointly owned poles and attached to the topmost crossarms thereon were two wires owned and maintained by the defendant. On these poles and below the crossarms just mentioned were other crossarms to which a portion of the three mile section of the plaintiff's inert wires was attached. These wires ran along the northerly side of Westminster Hill Road from Godley's property toward the east on several jointly owned poles and thereafter continued in that direction to and past the Sage property on poles solely owned by the plaintiff.

The accident which caused Corkum's death happened about one hour after a severe electrical storm in these circumstances. One of the defendant's wires carrying about 2,300 volts had become severed during the storm and had fallen upon one of the plaintiff's solely owned inert wires which was below it, so that about 1,100 to 1,300 volts were transmitted from the live wire to the inert wire. The plaintiff's wire thereby became energized throughout its entire length down to and past the Sage property. This occurred

---

[1] It was agreed that the plaintiff merged with the Postal Telegraph and Cable Company in October, 1943, and became on April 17, 1945, by amendment, a party to the common ownership agreement hereinafter mentioned.

[2] "Eighth: Subject to the Provisions of Article Ninth hereof . . . the Light Company agrees to save the Telegraph and Telephone Companies harmless from any and all loss and damage occasioned by the Light Company's electric currents or by the erection and maintenance upon said poles of its wires, cables, crossarms, fixtures and apparatus. Ninth . . . in case any claim for damages or compensation to any owners of property abutting on the highways upon which said poles are located . . . the party upon which said claim is made shall immediately notify the other parties hereto, and the settlement . . . of such claim by the party upon which such claim is made shall be subject to the approval of the other parties hereto. Each party shall place, maintain and be solely responsible for its crossarms, fixtures and wires and for the electric currents employed by it in the conduct of its business, and for any damage to persons or property, including the poles and wires maintained under this agreement, due solely to its act or neglect. . . . Each party hereto shall take reasonable precaution to prevent the interference of its wires on said poles or of its system with the system and service of the other parties hereto. . . ."

at a point on or near Godley's property.  And it could have been found that at or near the place where the break occurred the defendant had improperly maintained its wires in that limbs of trees were permitted to be within inches of the severed wire.

The plaintiff's wire thus energized became severed at the point where the accident happened in the following circumstances.  At a point opposite the Sage property one or both of the defendant's service wires leading from one of its poles to the Sage house were in contact with the plaintiff's wire.  (The pole to which those wires were attached was not one which the defendant owned in common with the plaintiff.)  Due to the fact that the plaintiff's wire was then energized the contact with it caused it to burn, break, and fall to the ground.  It was in that condition when Corkum came in contact with it and was electrocuted.  The defendant concedes that there was evidence that it negligently maintained its pole opposite the Sage property so that its wires sagged and came close to or rested upon the plaintiff's wire.

Corkum's administratrix instituted actions against the plaintiff and the defendant to recover for the death and conscious suffering of her intestate.  These actions were settled before trial.  Prior to this settlement the plaintiff and the defendant entered into an agreement which provided that each should be free to settle the claim against it for a sum not to exceed $3,850 and that if either party had a claim against the other by virtue of the common ownership agreement "the amount of said claim shall be the amount of said settlement, together with such expenses as it may be entitled to by virtue of the provisions of the said agreement as amended."  The defendant admitted that it had received timely notice from the plaintiff to undertake the defence of the action brought by Corkum's administratrix, and that it declined to do so.  The plaintiff by way of settlement paid Corkum's estate the sum of $3,250 and incurred legal expenses in connection therewith in the sum of $1,227.54. It was agreed that this settlement was a reasonable and

prudent one and that the expenses incurred were fair and reasonable. The defendant paid Corkum's estate the sum of $3,850 and incurred legal expenses in the amount of $1,702.34. It was agreed that both sums were fair and reasonable.

The plaintiff in the present action seeks reimbursement from the defendant for the sum paid by the plaintiff to Corkum's estate and for the legal expenses incurred by it. The declaration contains two counts: "one at common law and one based upon [the common ownership agreement]." The case was tried to a jury who returned verdicts for the plaintiff on each count and a verdict for the plaintiff (defendant in set-off) on the declaration in set-off. Before the case was submitted to the jury the defendant presented motions for a directed verdict on each count. Both motions were denied and the questions for decision arise from their denial.

Since we are of opinion that the plaintiff was entitled to go to the jury on the count based on the common ownership agreement we shall confine our discussion to that count. The defendant contends that the plaintiff has failed to prove that it has in any legal sense suffered "loss" or "damage" within the meaning of that agreement. The argument in support of this contention seems to be as follows: Since the action brought by Corkum's estate was one for death there could have been no recovery over if that case had been tried and a judgment had been rendered in favor of the estate. For this proposition the defendant relies on *Boott Mills* v. *Boston & Maine Railroad,* 218 Mass. 582. And if the judgment resulting from such a trial had been in the plaintiff's favor and against the estate then there would be no basis for any recovery against the defendant as there would have been no loss. It was incumbent on the plaintiff to prove by evidence or by prior adjudication that it was liable in the original action concerning which it seeks reimbursement.

In *Boott Mills* v. *Boston & Maine Railroad,* 218 Mass. 582, it was held by a divided court that where one has paid a

judgment in a death action he cannot recover the whole or any part of the damages thus paid from another who contributed to the wrongful conduct on which the judgment was founded. In other words the court held that the principle laid down in *Gray* v. *Boston Gas Light Co.* 114 Mass. 149, had no application to a statutory action for death. There was no contract of indemnity involved in the *Boott Mills* case. We see no valid reason why parties even with respect to liability for death under our statutes may not enter into a contract of reimbursement of the sort here involved. We are not disposed to apply the principle of the *Boott Mills* case to one like the present.

The argument that the plaintiff failed to establish "by evidence or prior adjudication" that it was liable in the Corkum action is without merit. It was expressly stipulated by the parties that the settlement by the plaintiff with Corkum's estate was a "reasonable and prudent" one and it is not now open to the defendant to argue that the plaintiff was as matter of law not liable to the estate and could have successfully defended the death action.

The defendant further argues that the provisions of the common ownership agreement quoted above do not contemplate the factual situation here involved. It is argued that the fact that the accident occurred nearly a mile away from the jointly owned poles by reason of a contact between the plaintiff's wire and wires of the defendant which were not attached to jointly owned poles is sufficient to take the case outside the agreement. We do not agree that the indemnification agreement is to be given such a restricted application. In its terms it covers all "loss and damage occasioned by the Light Company's electric currents or by the erection and maintenance upon . . . [the joint] poles of its wires, cables, crossarms, fixtures and apparatus." This was sufficiently comprehensive to include the loss sustained by the plaintiff. It is to be noted that the contact at the Godley property which caused the plaintiff's wire to be energized resulted from a wire of the defendant which had fallen from one of the jointly owned poles.

The bill of exceptions in this case is inordinately and unnecessarily long. It falls far short of meeting the statutory requirement that the "exceptions shall be reduced to writing in a summary manner" (G. L. [Ter. Ed.] c. 231, § 113) and imposes an unreasonable and needlessly heavy burden on this court. This requirement of the statute is something more than a pious wish and if it is not complied with the judge has not only the power but the duty to disallow the bill. *Graustein, petitioner*, 305 Mass. 568, 569, and cases cited. *Rines, petitioner*, 331 Mass. 714, 719–720.

*Exceptions overruled.*