*Municipal Court of the City of Boston*

No. 456046

**THE NEW YORK CENTRAL RAILROAD CO.**

**v.**

**PHILIP W. SHAFFER**

(December 19, 1958 — May 21, 1959)

*Present*: Lewiton, J. (Presiding), Roberts & Shamon, JJ.

Case tried to *Mottola, Sp. J.*

*Lewiton, J.* The plaintiff railroad paid $2,467.60 to one of its employees in settlement of the latter's claim under the Federal Employers' Liability Act for injuries sustained by the employee. In this action the plaintiff seeks to recover that sum from the defendant under the indemnity provisions of a sidetrack

agreement between the plaintiff and defendant. The case is here on report of the trial court's denial of defendant's requests for rulings. At the argument before us, the defendant waived his claims with respect to the denial of all requests other than those numbered 1 to 6, inclusive.

The agreement on which this action is based was dated April 23, 1951 and pertained to a sidetrack running from the plaintiff's main line, for an appreciable distance across the defendant's land. The agreement contained a covenant by the defendant (therein referred to as "the Industry") that it would not "place nor allow to be placed . . . any obstruction of any kind upon the sidetrack or within the space of 6 feet outside the nearest rail of any straight portion of sidetrack, . . . nor within any such additional space outside the nearest rail of any curved portion of sidetrack as the standard requirements of the Railroad Company [the plaintiff] may from time to time prescribe for curves of like degree . . .; and the Industry will save harmless and indemnify the Railroad Company from and against all losses, claims, suits and expenses which the Railroad Company may suffer or be subject to, caused wholly or in part by the existence of any such obstruction whether heretofore or hereafter placed . . ."

The agreement also contained the following provisions:

"The Industry further agrees to save harmless and indemnify the Railroad Company from and against all loss, damage or injury arising from any act or omission of the

Industry or the employees or agents of the Industry, to the person or property of the Industry or the Railroad Company, or their respective employees, and to the person or property of any other person or corporation, while on or about the said sidetrack; . . ."

*There was evidence that* on September 6, 1951 the defendant conveyed to one Strogoff a portion of the defendant's land over which the sidetrack ran, the portion so conveyed lying between the plaintiff's main track and the portion retained by the defendant. In the deed of conveyance, the defendant reserved to himself a ten foot right of way across the land being conveyed to Strogoff for "all railroad sidetrack purposes".

*At the trial there was evidence tending to show that* on October 13, 1956 one Shea was working as a brakeman for the plaintiff on a switching operation on that portion of the sidetrack which was on Strogoff's land; that at the point where Shea was injured, the track was curved, and there were huge piles of scrap adjacent to and up to the track rail; that as Shea stepped back about two feet from the car on which he had been working, in order to signal the engineer, his left leg was caught between the car and a boiler tank which "came down off the pile of junk" alongside the track.

Shea made claim against the plaintiff under the Federal Employers' Liability Act and the plaintiff paid him $2,467.60 in settlement. It was agreed at the trial of the instant case that the settlement was a reasonable one, that "due notice of the time and place of the injury was

given by the plaintiff to the defendant with a demand upon the defendant to indemnify the plaintiff for the aforementioned amount under the terms of the sidetrack agreement", and that the defendant refused to indemnify the plaintiff after due notice of the settlement.

The defendant offered no evidence but filed several requests for rulings of law. These requests were denied by the trial judge on the basis of the following facts found by him:

> ". . . The court finds that the Industry had control of the premises in question and failed to supervise and see that no obstruction was upon the premises but to maintain clearance outside the nearest rail of any straight portion of the track within six feet, but instead the Industry allowed huge piles of scrap adjacent to and up to the track rail. The plaintiff's employee was injured within two feet from the car.
>
> "The court finds as matter of fact, that the plaintiff complied with all the conditions and obligations called for in regard to notifying the Industry of the liability. Therefore the court finds for the plaintiff in the sum of $2467.60."

There was no prejudicial error. The trial judge properly ruled (though he stated it as a finding) that the rights of the parties here are governed by the provisions of the sidetrack agreement of April 23, 1951. *Farrell v. Eastern Bridge & Structural Co.,* 291 Mass. 323, 325; *Western Union Teleg. Co. v. Fitchburg Gas & Elec. Light Co.,* 334 Mass. 587, 592; *John P. Gorman Coal Co. v. Louisville & N. R. Co.,* 213 Ky. 551; *Minneapolis-Moline Co. v. Chicago, M., St. P. & P. R.R. Co.,* 199 F2d 725, 731.

The defendant contends that since

there was no evidence that he or his employees actually placed the boiler tank within six feet of the track, liability could be imposed only upon a finding that he or his employees had "allowed" the boiler tank to be placed within the prescribed area, and that such a finding could not properly be made in the absence of evidence that the defendant or his employees consented to the placing of the tank there, or at least permitted the tank to be there after having knowledge of its presence. Requested rulings numbered 5 and 6 are based upon this restricted interpretation of the phrase "allow to be placed".

The word "allow" is a word of many meanings and shades of meaning, and has been judicially construed on numerous occasions in various types of situations. In some instances, it has been held to imply consent or toleration after knowledge of the facts. *Cf. Tommassen v. Feeley,* 316 Mass. 547, 550; *McDiarmid v. Com.,* 184 Va. 478; *Colonial Stores, Inc. v. Scholz,* 73 Ga. App. 268; *Sawyer v. Mould,* 144 Iowa 185. In other cases it has been held to involve no element of consent or knowing toleration, but only the failure to prevent the proscribed conduct or condition. *Cf. C. v. Curtis,* 9 Allen 266, 271; *Gulf Oil Corp v. Lemmons,* 198 Okl. 596; *Markus v. Justice's Ct.* (Cal. App.) 255 P2d 883, 887.

The word "allow" is synonymous with the word "permit", which was construed in the early Massachusetts case of *C. v. Curtis,* supra, which involved an ordinance forbidding any person to "permit" horses, cattle or

swine under his care to go upon any public sidewalk so as to interfere with the use thereof. It was held that the ordinance imposed on the defendant who drove his hogs through a public street the absolute duty of preventing the hogs under his control from going upon the sidewalk and interfering with its use. The Court said: "One of the definitions of the word 'permit' is 'to allow by not prohibiting'". (9 Allen 266, 271).

We do not agree that the word "allow" as used in the indemnity agreement here involved should be given the narrow interpretation urged upon us by the defendant. It is, of course, elementary that contracts of indemnity are to be fairly and reasonably construed in order to ascertain the intention of the parties and to effectuate the purposes sought to be accomplished. *Century Indem. Co. v. Bloom,* 325 Mass. 52, 56; *Bryne v. Gloucester,* 297 Mass. 156, 158; *Leshefsky v. Amer. Employers' Ins. Co.,* 293 Mass. 164, 170; *No. American Ry. Const. Co. v. Cincinnati Traction Co.,* 172 Fed. 214, 216; *So. Pacific Ry. Co. v. Layman,* 173 Ore. 275.

The indemnity provisions were included in an agreement pertaining to the construction, maintenance, and operation of a railroad sidetrack running from the main line of the railroad, on and across land owned or controlled by the defendant. It is a matter of common understanding that the safe operation of railroad cars requires that there be no obstructions within a distance of at least six feet of the track. The presence of obstructions

within that area would obviously create substantial dangers of injury or damage to persons or property, no matter who placed the obstructions there or how they came to be there. As a simple matter of safety precaution, it was important that the presence of such obstructions within the defined area should be effectively prevented. However, such prevention could be assured only by the person controlling the private land over which the side track was to run. This was the purpose sought to be accomplished by the provisions under consideration. Against this background, and construing the agreement as of the time it was made, when the defendant controlled the entire parcel of land over which the spur track was to run, the plaintiff's agreement that it would not "place or allow to be placed" any obstructions within specified distances from the track, must be construed as requiring the defendant to prevent the presence there of any such obstructions, or at least, as requiring that the defendant take all reasonably possible action to prevent their presence in the defined danger zone. Under such construction, there can be no basis for a requirement that the defendant have actual knowledge of the presence of such obstructions and knowingly tolerate or consent to their presence there. The danger sought to be avoided would be just as great if, by reason of the defendant's failure to maintain adequate supervision, he remained unaware indefinitely that such obstructions were being placed and remained within six feet of the

tracks, and did nothing to prevent their continuing presence there. From this point of view, constructive knowledge attributable to the defendant would be sufficient to charge him under this indemnity agreement. To the extent that the defendant did not take all reasonably possible action to prevent the huge piles of scrap and the boiler tank from being and remaining within six feet of the track, he could properly be found to have "allowed" those obstructions to be placed there. Consequently, we conclude that there was no error in the denial of requests numbered 5 and 6, based on an assumed requirement of actual knowledge or affirmative consent on the part of the defendant or his employees.

The fact that the injury occurred on land previously conveyed to Strogoff does not in our opinion affect the liability of the defendant under his sidetrack agreement with the plaintiff. In that agreement he undertook certain responsibilities with respect to obstructions within six feet of the sidetrack, throughout its length. There is nothing to indicate that the plaintiff was advised of the conveyance to Strogoff, or consented to it, or released the defendant from any portion of the obligations which he assumed in the agreement, or that the plaintiff had ever agreed to accept the responsibility of Strogoff in lieu of that of the defendant, with respect to any part of the sidetrack or its adjacent area. The defendant could not unilaterally relieve himself of any of the obligations which he assumed in the sidetrack agreement by merely

conveying to a third party a portion of the land over which the sidetrack ran. *Dwyer v. Lavigne,* 319 Mass. 26, 28; *Carlton Chambers Co. v. Trask,* 261 Mass. 264, 267; *68 Beacon St., Inc. v. Sohier,* 289 Mass. 354, 359; *Willison on Contracts (Rev. Ed.),* §411; *Restatement, Contracts,* §160(4).

The denial of requests numbered 3, 4, 5 and 6 was proper, also, because they dealt with the boiler tank as an isolated factor, wholly unrelated to the huge piles of scrap adjacent to the track at the point where the plaintiff's employee was injured. Since the evidence was that the tank which struck Shea came down off a pile of scrap alongside the track, the trial judge could have found that the presence of this scrap was a direct causal factor in the injury, and he was not required to rule on the effect of a fragment of the evidence. *Liggett Drug Co., Inc. v. License Commrs. of No. Adams,* 296 Mass. 41, 53-54; *Smith v. Import Drug Co.,* 253 Mass. 368, 371; *DiLorenzo v. Atlantic Nat. Bank,* 278 Mass. 321, 324; *Marchesi v. Selectmen of Winchester,* 312 Mass. 28, 31.

In requests numbered 1 and 2 the defendant requested rulings that he was entitled to a finding as a matter of law. In our opinion these rulings need not have been given. The trial judge's general finding for the plaintiff must stand if it was warranted on any possible view of the evidence. He was entitled to draw proper inferences from all the evidence, and his general finding for the plaintiff imports a finding of all subsidiary facts and the draw-

ing of all permissible inferences in its support, where his general finding is not vitiated by subsidiary findings made by him. *Kennedy Bros., Inc. v. Bird*, 287 Mass. 477, 484; *Moss v. Old Colony Trust Co.*, 246 Mass. 139, 143; *Jones v. Clark*, 272 Mass. 146, 149.

We think that the evidence warranted the trial court in finding [a] that the defendant failed to take necessary and appropriate action to carry out his obligations with respect to obstructions within six feet of the sidetrack, [b] that the presence of the huge piles of scrap alongside the track at the point where the injury to Shea occurred had a direct causal relation with that injury, and [c] that the plaintiff complied with all of the prerequisites to its being entitled to indemnification by the defendant under the sidetrack agreement.

*Report dismissed.*

Richard J. Ferriter of Boston, for the Plaintiff.

Eugene C. McCabe and Thomas F. Daley, both of Boston, for the Defendant.