565 F.2d 193
 Mildred T. BULLARD, Administratrix, et al., Plaintiffs, Appellees,
v.
CENTRAL VERMONT RAILWAY, INC., Defendant, Appellant,
and
Robert W. Meserve et al., Trustees, Defendants, Appellees.
Harry A. GONYER, Plaintiff, Appellee,
v.
CENTRAL VERMONT RAILWAY, INC., Defendant, Third-Party
Defendant and Third-Party Plaintiff, Appellant,
and
Robert W. Meserve et al., Trustees, Defendants, Third-Party
Defendants and Third-Party Plaintiffs, Appellees.
 Nos. 77-1298 and 77-1299.
 United States Court of Appeals,
First Circuit.
 Argued Oct. 3, 1977.
Decided Nov. 15, 1977.
As Amended Nov. 18, 1977.
 
 Richard E. Bachman, Boston, Mass., with whom Timothy H. Donohue, and Hale, Sanderson, Byrnes & Morton, Boston, Mass., were on briefs, for appellant.
 Robert R. Harrington, Boston, Mass., with whom Thomas D. Burns, and Burns & Levinson, Boston, Mass., were on brief, for Robert W. Meserve et al., defendants, appellees.
 Robert P. Malone and Malone, McCarthy & Hunt, Boston, Mass., on brief, for Harry A. Gonyer, plaintiff, appellee.
 Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, CRARY, District Judge.*
 LEVIN H. CAMPBELL, Circuit Judge.
 
 
 1
 On October 2, 1972, freight trains operated by the Boston & Maine Railroad (B & M) and the Central Vermont Railway (Central Vermont) were in a head-on collision in Belchertown, Massachusetts on a stretch of track owned by Central Vermont. Three employees of the railroads were killed and two were injured. The injured employees and the representatives of the estates of the deceased employees sued the railroads in the district court. The actions by employees against their own employer were brought under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. The railroads as non-employers were sued for negligence under the common law of Massachusetts. During the trial, the B & M settled with its injured employee and the estate of its deceased employee. In the actions brought by Central Vermont employees, the jury found both railroads negligent and awarded damages against each for the deaths of two employees and the injury to the third.[1] The district court thereafter ruled in favor of B & M on its cross-claim, holding Central Vermont liable to pay all damages awarded against B & M, purportedly in accordance with the terms of the 1941 agreement which permitted B & M to use Central Vermont's track. In this appeal, Central Vermont first challenges as excessive the $35,000 which the jury awarded its injured employee, Gonyer. Central Vermont also appeals from the district court's judgment insofar as it held Central Vermont liable under the agreement for the damages which the jury awarded against B & M for the deaths of Central Vermont's employees, Bullard and Green.
 
 
 2
 * On the day of the accident, Gonyer was stationed with two others, the engineer, Bullard, and the head brakeman, Green, in the engine of the Central Vermont train. As the train entered a straightaway in Belchertown, the brakeman jumped from his seat and yelled "B & M job." The brakeman immediately applied the emergency brake. Gonyer looked up and saw that both trains were about to collide head-on. Gonyer leaped to the right door of the engine as the other two crewmen headed for the left exit. Gonyer swung himself around, holding the iron railing outside the door, and jumped into the bushes along the embankment. He crawled to his feet, heard "something" behind him, and ran until he realized that two coal cars from the derailed train had rolled down the embankment after him but had been stopped by trees. Gonyer testified that at this point he was "shaking all over" and headed for the caboose of the derailed Central Vermont train. He did not return to the scene of the collision because he "was too scared and . . . was shaking." Gonyer also testified that by this time his right foot had begun "to get sore, or it felt out of proportion."
 
 
 3
 At the rear of the train, Gonyer joined Carley, the conductor who had been in the caboose. They walked to the scene of the collision, looked for the two missing Central Vermont employees, and listened in vain for any sign of life. Gonyer testified that he brought Carley with him because "I was afraid of what I was going to see if I went there alone, and I wanted somebody with me. I didn't dare think I could face it alone." Amidst the B & M wreckage, Gonyer came upon the dying B & M fireman Griffin who was "moaning and groaning." Gonyer continued to look for the missing Central Vermont employees, and learned the next day that they had been found dead under the wreckage. Gonyer remained at the scene for close to five hours, spending the remainder of the afternoon setting down flares to warn oncoming trains and directing auto traffic at a grade crossing.
 
 
 4
 Gonyer testified further that by evening his right foot had become so painful that he could hardly walk. He went to a hospital, had an Ace bandage wrapped around his foot and obtained a pair of crutches. The next day, his foot was x-rayed, but there was no evidence as to what the x-ray revealed, if anything. No medical evidence or doctor's bills were presented. Gonyer testified that he used crutches for a little over two weeks and a cane for sometime afterwards. His foot was "real sore" and he could not put any weight on his foot for about two months after the accident. He also testified to seeing a doctor periodically and receiving physiotherapy at a hospital near his home but there was no hospital record or other evidence about this apart from his own testimony. Gonyer testified to remaining out of work for 11 weeks. Several weeks after returning, he said he was required to take a few more days off for x-rays because his "foot wasn't the way it should be." He testified that after returning to work he had to favor his left foot as his right foot hurt when he put much weight on it. He did not state how long this condition persisted. Gonyer was earning $400 per week at this time.
 
 
 5
 Gonyer testified that his job requires him to pass the accident site nearly every day and that he expects to see the deceased members of the Central Vermont crew waiting for him as he passes. There was no other evidence concerning the physical or psychological aftereffects of the accident. No physician or psychologist testified. The jury awarded Gonyer total damages of $35,000.
 
 
 6
 In LaForest v. Autoridad de las Fuentes Fluviales, 536 F.2d 443, 447 (1st Cir. 1976), we said,
 
 
 7
 "The rule of review commonly applied by federal appellate courts with respect to civil jury awards . . . is that the jury's otherwise supportable verdict stands unless 'grossly excessive' or 'shocking to the conscience'."
 
 
 8
 And in Betancourt v. J. C. Penney Co., 554 F.2d 1206, 1207 (1st Cir. 1977), we stated,
 
 
 9
 "(I)n reviewing a jury's award we are constrained to view the evidence in the light most favorable to the plaintiff."
 
 
 10
 Under even these deferential standards of review, we conclude that the jury award in Gonyer's case, being grossly excessive, cannot stand.
 
 
 11
 From Gonyer's testimony the jury was warranted in finding that he suffered some sort of foot injury which caused him pain, disability and lost earnings for several months.[2] But the jury had no basis for believing that the pain or the disability continued to any substantial degree thereafter. While he spoke of having to favor his left foot he did not say how long the condition persisted and the jury was not entitled to speculate. We conclude that to compensate for damages, including lost wages, associated with the foot injury alone, $35,000 would plainly be excessive.
 
 
 12
 We are left, therefore, with the question whether much of the award can be justified as compensating for fright and mental anguish. Prosser, The Law of Torts 330 (4th ed. 1971) states as a general rule,
 
 
 13
 "Where the defendant's negligence inflicts an immediate physical injury, such as a broken leg . . . (courts allow) compensation for purely mental elements of damage accompanying it such as fright at the time of injury, apprehension as to its effects, nervousness, or humiliation at disfigurement."
 
 
 14
 In an early Massachusetts case, plaintiff was thrown out of a carriage and off a low bridge. He suffered minor physical damages but the court sustained a jury award of damages based primarily on "mental anguish, and the risk and peril attending the accident." Canning v. Williamstown, 55 Mass. 451, 452 (1848). And in Sullivan v. Old Colony Street Ry. Co., 197 Mass. 512, 516, 83 N.E. 1091, 1092 (1908), the court stated the general rule:
 
 
 15
 "The mental suffering, for which damages can be recovered, therefore, is limited to that which result to the person injured, as the necessary or natural consequence of the physical injury. But sentiments of grief, sorrow and mourning, which are aroused by extraneous causes, thoughts or reflections, are excluded."
 
 
 16
 Accord, Lewis v. City of Springfield, 261 Mass. 183, 187-88, 158 N.E. 656 (1927). Under this authority, which we believe states the law generally applicable in these situations, Gonyer could recover for his fright at the time of the accident but could not recover for the grief caused by the loss of his friends in the accident.
 
 
 17
 FELA cases indicate that mental distress is compensable on a basis similar to that in Massachusetts and the other common law jurisdictions.[3] Where plaintiff suffered severe frostbite, the Second Circuit held that "the jury could also consider in its computation of damages the fear and anxiety which plaintiff experienced in knowing of the ever-present threat of amputation." Hayes v. New York Central R. Co., 311 F.2d 198, 201 (1962). In another FELA case on point, the Missouri Supreme Court approved a jury instruction permitting damages for "mental suffering . . . he has endured to date by reason of such (physical) injuries." Adams v. Atchison, T. & S. F. Ry. Co., 280 S.W.2d 84, 94 (1955).
 
 
 18
 The jury was therefore entitled to compensate Gonyer for the elements of mental distress properly attributable to this accident, limited, of course, to those of which there was competent evidence. These elements included, on this record, Gonyer's fright just before the accident, when collision was imminent and he jumped, and his terror just after the trains had collided. The jury was not, however, entitled to compensate him for his sadness at the passing of his friends, nor, given the complete absence of meaningful evidence of mental or nervous aftereffects, was the jury entitled to compensate for those elements. Such damages would, on the record, be totally speculative. No witness, expert or otherwise, testified to behavioral harm or deficits attributable to the accident. Gonyer's testimony as to his feelings when he passes the accident site is not a sufficient basis for compensation. If there is to be compensation for nervousness, depression, or other mental conditions which may sometimes result from harrowing experiences of this sort, there must be evidence from which a jury can make an informed judgment as to the existence, nature, duration and seriousness of the condition.
 
 
 19
 We conclude that in the absence of probative evidence of compensable psychological or neurological effects enduring beyond the day of the accident, the $35,000 awarded was excessive.[4] While, as indicated, the jury was entitled to compensate for fright immediately before and after the accident, the total sum awarded goes far beyond any amount appropriate for this limited purpose and for the foot injury previously discussed. We do not underestimate the harrowing nature of plaintiff's experience, but find the award grossly excessive in the absence of competent proof of continuing mental or nervous effects. We accordingly remand for a new trial limited to the issue of damages.
 
 II
 
 20
 The remaining issue concerns the application of the terms of the 1941 contract between B & M and Central Vermont which apportion liability for injuries to each other's employees resulting from accidents on the Belchertown tracks. The pertinent portion of the 1941 contract provides as follows:
 
 
 21
 "5. (a) It is agreed that each party shall be solely responsible for all property loss or damage and for all personal injury or death caused by or resulting from the operation of its trains over the line here involved, where the trains, engines, cars or employees of the other party are not involved; provided, however, that if the loss, damage, injury or death is caused by a defect in the track on the line here involved or by negligent maintenance thereof, and if prior to the accident the B. & M. shall have notified the C.V. in writing of such defect or negligent maintenance and if a reasonable time for repairs has elapsed between such notice and such accident, then the C.V. shall pay the cost of such loss, damage, injury or death.
 
 
 22
 "(b) In any accident on the line here involved where the trains, engines, cars or employees of both parties are involved, the party which is solely at fault shall be responsible for the whole of the loss, damage, injury or death.
 
 
 23
 "(c) If there is joint negligence, or if the fault cannot be determined, the cost shall be borne as follows: Each party shall assume the cost occurring in connection with its own property, employees, passengers, freight, express or milk, and other loss, if any, shall be borne by the parties in equal shares."
 
 
 24
 In the district court, the jury found that Central Vermont was negligent under the Federal Employers' Liability Act. The jury also found B & M negligent under the common law of Massachusetts. Since the district judge's instructions did not require the jury to assess relative degrees of fault, the jury did not apportion liability between the railroads. The jury awarded $80,000 damages against B & M to each deceased Central Vermont employee's estate. Because the decedents' estates and Central Vermont had previously agreed to a settlement of $45,000 each in the event the jury found the railroad negligent, the jury was not asked to assess damages against Central Vermont. Finally, as noted above, the jury awarded damages of $35,000 to the injured employee Gonyer.
 
 
 25
 Central Vermont argues that the district court erred in interpreting its contract with B & M to require Central Vermont to assume B & M's damages liability for the deaths of Central Vermont employees Bullard and Green. Central Vermont argues first that the Massachusetts Wrongful Death Act, Gen.Laws c. 229, in effect in 1972, was punitive or penal in nature inasmuch as the legislature directed that damages of between $5,000 and $100,000 be awarded solely with reference to a defendant's degree of culpability. See Macchiaroli v. Howell, 294 Mass. 144, 147, 200 N.E. 905 (1936). And since damages are awarded in accordance with degree of fault, the usual principles of joint and several liability among tortfeasors, including equal rates of contribution, do not apply. See Boott Mills v. Boston & Maine R., 218 Mass. 582, 593, 106 N.E. 680 (1914). From this, Central Vermont would evidently have us conclude that we should construe the agreement in this case in light of wrongful death contribution principles and hold B & M liable for its own assessed share of the damages. But this argument ignores the fact that the Supreme Judicial Court of Massachusetts has held that indemnification agreements will be given effect even where contribution principles might otherwise require a tortfeasor to shoulder its own assessed portion of liability. See Western Union Telegraph Co. v. Fitchburg Gas & Electric Light Co., 334 Mass. 587, 592, 137 N.E.2d 459 (1956). The relevant inquiry, therefore, is whether the terms of the agreement between B & M and Central Vermont exclude damages in a wrongful death action from its indemnification provisions.
 
 
 26
 Addressing itself to this issue, Central Vermont argues that the indemnification agreement must be "fairly and reasonably construed in order to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished" and "with reference to the situation of the parties when they made it and to the objects sought to be accomplished." New York, N. H. & H. R. Co. v. Walworth Co., 340 Mass. 1, 3, 162 N.E.2d 789, 791 (1959) (quoting cases). Central Vermont maintains that the terms "cost", "loss" and "damage" found in the agreement should be interpreted to refer to "compensatory" damages but not to "punitive damages or fines assessed against the other party." The railroad claims that such an interpretation would be consistent with the contract's apparent intent that "each railroad absorb its own losses" and would avoid a windfall for an indemnitee which was much more at fault than the indemnifying railroad. We think that Central Vermont is seeking a reading of the term "cost" which is neither mandated by the aims of the contract nor consistent with the normal meaning of the terms "cost". See Methuen Construction Co. v. J & A Builders, Inc., 349 N.E.2d 357, 360-61 (Mass.App.1976).
 
 
 27
 There can be no question but that the jury found "joint liability" within the meaning of § 5(c) of the contract. And Central Vermont seems to concede that it is required by the agreement to pay all damages awarded to its injured employees. In the event of death, however, the damages awarded under Massachusetts law are, according to Central Vermont, transformed into a "fine" or "punitive damages." But the appellant places too much reliance on the Supreme Judicial Court's recognition of the punitive aspect of damages under the wrongful death statute. The court has also recently emphasized that "while there are aspects of the statute that are penal, it 'has compensatory features and a remedial function' as well." Mone v. Greyhound Lines, Inc., Mass., 331 N.E.2d 916, 917, 1975 Mass.Adv.Sh. 2326, 2329 n. 4, quoting Macchiaroli, supra. The court has also held that the right of action for wrongful death springs from the common law, not statute. Gaudette v. Webb, 362 Mass. 60, 71, 284 N.E.2d 222 (1972). At bottom, then, a wrongful death action is a common law method of redressing a personal wrong. From the plaintiff's viewpoint, the damages awarded are compensatory, just as are those awarded in an ordinary negligence action. We therefore attribute no force to the distinction which Central Vermont seeks to draw between "punitive" and "compensatory" damages.
 
 
 28
 Nor are we persuaded that requiring Central Vermont to bear the full cost of damages will create a windfall for B & M and work an injustice on Central Vermont. Central Vermont has not shown that the jury regarded B & M to be the greater wrongdoer. Central Vermont's settling with the plaintiffs for $45,000 cannot be meaningfully compared with the jury award of $80,000 for purposes of assessing relative degrees of fault. Cf. Western Union Telegraph Co., supra, 334 Mass. at 592, 137 N.E.2d 459. Moreover, there is nothing inherently unfair about such an indemnification agreement, entered into by parties of relatively equal bargaining strength and mutually applicable.[5] Had Central Vermont wished to escape what it now perceives as an unfair result, it could have expressly so provided in the contract. See Methuen Construction Co., supra.
 
 
 29
 The judgments in No. 77-1298 are affirmed. The awards of damages in No. 77-1299 are vacated and the cause is remanded for a new trial limited to the issue of damages. In all other respects, the judgments are affirmed.
 
 
 30
 So ordered.
 
 
 
 *
 Of the Central District of California, sitting by designation
 
 
 [1]
 The jury found Central Vermont negligent under the Federal Employers' Liability Act, 45 U.S.C. §§ 51 et seq. B & M was held liable under the common law of Massachusetts. The jury assessed Gonyer's damages for his injuries at $35,000. The jury awarded the representatives of each of the two decedents $80,000 against B & M. Because Central Vermont had previously agreed with the decedents' representatives that in the event of a judgment of liability the railroad would pay $45,000 to each, the jury did not reach the issue of damages to be assessed against Central Vermont
 
 
 [2]
 Central Vermont conceded lost wages of roughly $5,000 in its brief
 
 
 [3]
 All common law jurisdictions appear to agree, that, at least where a plaintiff has suffered some physical injury, he may recover for fright suffered during the accident and for mental distress directly associated with his physical injuries. 2 F. Harper & F. James, The Law of Torts, § 18.4, at 1031-32 & n. 4 (1956)
 
 
 [4]
 See Henry v. A/S Ocean, 512 F.2d 401, 408-09 (2d Cir. 1975); Rivera v. Rederi A/B Nordstjernan, 456 F.2d 970, 975 (1st Cir. 1972); In re United States Steel Corp., 436 F.2d 1256, 1266 (6th Cir. 1970)
 
 
 [5]
 Central Vermont's argument to that effect is substantially undermined by the actions of B & M toward its own employees. Before trial B & M reached a settlement agreement with Greenlaw, who was injured in the collision, for $15,000, and an agreement with the representatives of Griffin's estate for $285,000, both pursuant to the indemnification agreement