Peter P. **GARBINCIUS**, Administrator of the Estate of Paul C. Garbincius, Plaintiff-Appellee,

v.

**BOSTON EDISON COMPANY,** Defendant-Appellant-Appellee,

and

**Charles Contracting Co., Inc.,** Defendant-Appellant.

**Nos. 79–1365, 79–1376.**

United States Court of Appeals, First Circuit.

Argued Feb. 5, 1980.

Decided May 28, 1980.

---

Levinson, Boston, Mass., were on brief, for Boston Edison Company.

David A. Barry, Boston, Mass., with whom Anthony M. Doniger, Natasha C. Lisman, and Sugarman, Rogers, Barshak & Cohen, Boston, Mass., were on brief, for Peter P. Garbincius, et al.

Before ALDRICH and BOWNES, Circuit Judges, PETTINE, District Judge.[**]

BOWNES, Circuit Judge.

This diversity wrongful death action arises as a result of an accident in which Paul C. Garbincius, plaintiff's intestate, drove his automobile into an excavation on Commonwealth Avenue in Boston, dug by defendant-appellant, Charles Contracting Co., Inc. (Charles), pursuant to a contract with defendant-appellant, Boston Edison Company (Edison). The jury answered nine questions, finding that both defendants were negligent, that the culpability of Edison amounted to $100,000, that the culpability of Charles was $150,000, and that the comparative negligence of the parties was as follows: Charles—60%; Edison—35%; the decedent—5%. Judgment was rendered in favor of plaintiff against Charles in the amount of $142,500 and against Edison for $95,000. Edison had brought a cross-claim against Charles based on indemnity under Massachusetts law and by contract. Judgment was rendered in favor of Edison in the amount of $95,000 on its cross-claim. Both defendants have appealed.

The issues are as follows: (1) whether plaintiff had the legal capacity to sue; (2) whether it was error for the district court to admit certain testimony and evidence; (3) whether it was error to award judgment to Edison on its cross-claim; and (4) whether the trial court erred in its wording of the special question on the degree of comparative negligence of the parties.

We start on a sour note. Most of the issues we address involve Massachusetts law, yet none of the parties has complied with our local rule 11(h), which requires

Cynthia J. Cohen, Cambridge, Mass., with whom Philander S. Ratzkoff, Charles W. O'Brien, Ellen S. Cooper, and Parker, Coulter, Daley & White, Boston, Mass., were on brief, for Charles Contracting Company, Inc.

Thomas D. Burns, Boston, Mass., with whom Lawrence B. Wernick, and Burns &

[**] Of the District of Rhode Island, sitting by designation.

that citations to state cases include the National Reporter System. Since the writing judge does not have ready access to the Massachusetts Reports, he has had to do a lot of work that is the responsibility of counsel. This comment is particularly appropriate when parties cite only the Advance Sheets of the Massachusetts Appeals Court, which no federal judge should be expected to possess.

*Capacity to Sue*

■ Paul Garbincius died on November 17, 1973, as a result of the injuries received on November 11, 1973, when his car went into the excavation. On January 24, 1974, Peter Garbincius, Paul's father, was appointed administrator of his son's estate in New York, the state of the decedent's residence. In the complaint filed on June 7, 1974, it was alleged that plaintiff was the duly appointed administrator of the estate of Paul Garbincius. He was not appointed ancillary administrator in Massachusetts until March 30, 1979. Trial commenced on May 3, 1979. At the close of plaintiff's case, both defendants moved for a directed verdict on the ground that plaintiff lacked capacity under Massachusetts law to maintain the action. In a thoughtful and perceptive opinion, which we adopt, the district court denied the motions. The court looked to the rationale for requiring ancillary administration, *i. e.*, to make sure that there be only one action and one recovery and to ensure that taxes and other debts owed by the decedent are paid, and correctly concluded that, since plaintiff was ancillary administrator at the time of trial, the state interests were fully protected. We also agree with the district court that the defendants waived any defects as to plaintiff's standing. Edison filed a general denial, but made no specific negative averment as required by Fed.R.Civ.P. 9(a).[1] *See Mar-*

*ston v. American Employers Insurance Co.,* 439 F.2d 1035, 1041 (1st Cir. 1971). Charles waived any defects by failing to raise the defense prior to trial at all.

*The Admission of Testimony and Evidence*

■ Both defendants claim that it was error for the court to allow George Kent to testify as an expert and give an opinion as to highway construction safety. In a diversity jurisdiction case, the Federal Rules of Evidence with respect to expert witnesses control. *Gibbs v. State Farm Mutual Insurance Co.,* 544 F.2d 423, 428 n.2 (9th Cir. 1976). *Cf. Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (Fed.R. Civ.P.). Under Fed.R.Evid. 104, preliminary questions concerning the qualification of a potential witness are determined by the court. Fed.R.Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

■ Our standard of review of the trial court's determination of admissibility of expert opinion is the clearly erroneous test. *Ignacio v. People of Territory of Guam,* 413 F.2d 513, 520 (9th Cir. 1969), *cert. denied,* 397 U.S. 943, 90 S.Ct. 959, 25 L.Ed.2d 124 (1970); *see* 11 Moore's Federal Practice § 702.10[3] (1976).

■ Kent was a graduate civil engineer who had worked for the Interborough Rapid Transit Company in New York from 1929 to 1943, one and one-half years of which were spent investigating claims and accidents. His safety work had to do with controlling automotive traffic when supports for the elevated railway were being

---

1. Fed.R.Civ.P. 9(a):

    (a) *Capacity.* It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party, except to the extent required to show the jurisdiction of the court. When

    a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.

removed from the streets. He was also responsible for safety procedures to be followed when street excavations for repairing underground sewer lines and cables were dug. After that, he had extensive experience with Stone and Webster relative to the construction and operation of power plants. Prior to trial, Kent had studied publications on traffic safety procedures to be used during highway construction. He familiarized himself with photographs of the scene of the accident, the accident reports filed, and the depositions of investigating officials. We find that it was not clearly erroneous for the district court to have allowed Kent to give his opinion about the adequacy of the number and placement of the devices used for warning motorists of the excavation. While his work experience in traffic safety procedures during highway construction stopped in 1943, we think this background plus his engineering training and focussed study preparatory to trial made him, but just barely, a qualified witness whose testimony could assist the jury.

During his direct examination, Kent was allowed to read from two manuals which were subsequently marked as exhibits. One was the Manual on Uniform Traffic Control Devices, Part VI, Traffic Controls for Street and Highway Construction and Maintenance Operations by the Department of Transportation, Federal Highway Administration. The other was Chapter 39, Highway and Street Construction, part of the Manual of Accident Prevention in Construction published by the Associated General Contractors of America. The two documents were offered and received in evidence after Kent had read portions of them to the jury over the objections of defense counsel.

■ While it can be argued that reading from the booklets was permissible under Fed.R.Evid. 803(18),[2] the rule expressly prohibits such material from being received as exhibits. However, the question of prejudice in every case depends upon the facts and, although the underpinnings of plaintiff's expert were shaky to the point of trembling and the admission of the manuals was clear error, a divided court believes that, on the record as a whole, the errors were harmless and not prejudicial. 28 U.S.C. § 2111; Fed.R.Civ.P. 61. There was testimony that on three sides of the excavation there were barricade planks six to eight feet above the street level, while the opening facing oncoming traffic only had two foot high barrier boards. There was also testimony from which the jury could have found that there was only one lighted caution sign warning of the excavation. A disinterested witness, called by the defendants, who was driving behind the decedent testified that there were two barricades (wooden horses) in front of the excavation. The jury, without the benefit of any expert opinion, could well have found that the placement and number of barricades were woefully inadequate. The undisputed testimony was that no one from Charles or Edison checked the position or location of any of the warning devices after they were put in place on Friday afternoon at the close of work. The accident occurred shortly after 1:00 A.M. on Sunday morning:

### The Judgment on Edison's Cross-claim

■ There are two questions to be decided: whether Edison had a right to be indemnified under Massachusetts common law and/or whether the contract indemnification agreement between it and Charles was valid. We address first the issue of common law indemnity. It seems settled in Massachusetts that "ordinarily one who has defended and lost an action of tort for his own negligence cannot recover for indemnity against another." *Ford v. Flaherty,* 364 Mass. 382, 305 N.E.2d 112, 115 (1973). But indemnity is allowed where there is vicarious liability.

---

**2.** (18) *Learned treatises.*—To the extent called to the attention of an expert witness upon cross-examination or relied upon by him in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits.

Indemnity is permitted only when one does not join in the negligent act but is exposed to derivative or vicarious liability for the wrongful act of another. In such cases the court has held that plaintiffs in the indemnity actions had no participation in the negligence of the defendants.

*Stewart v. Roy Bros. Inc.*, 358 Mass. 446, 265 N.E.2d 357, 365 (1970).

■ We must, therefore, decide whether Edison's liability was based upon its personal negligence or upon vicarious responsibility for the acts of the independent contractor, Charles. To resolve this question, we first turn to the facts. There was no evidence that Edison agreed to undertake any of Charles' responsibilities relative to the excavation or that Charles expected or relied upon it to do so. Charles, as an independent contractor, owed Edison a duty to keep the premises safe at all times. That Edison had a duty to the public to see to it that Charles did so does not make Edison personally negligent vis-a-vis Charles. If Edison had chosen simply to sit on its hands, relying solely on Charles, it would have been entitled to full indemnity. That it hired a policeman to direct traffic during working hours and had a job inspector checking on Charles did not change the relationship between Edison and Charles. Edison and Charles did not act jointly. Charles' job foreman, Renato DiStefano, testified that he was responsible for safety and setting up the barricades. He stated flatly that Edison "got nothing to do with the barricades." DiStefano further testified that Charles had the responsibility to keep the barricades up at night. Plaintiff's decedent was killed because of the negligence of Charles; Edison's liability was purely vicarious. If the action had been brought solely against Edison, it could have recovered against Charles in a separate action because the parties were not in *pari delicto* as to each other. *Hollywood Barbecue Co., Inc. v. Morse*, 314 Mass. 368, 50 N.E.2d 55, 56 (1943). The general rule has been stated as follows:

§ 95. *Person Responsible for a Dangerous Condition.*

Where a person has became [*sic*] liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition.

Restatement of Restitution § 95 (1937). We see no reason why the same principle should not apply where the plaintiff has joined the owner and independent contractor in the same action.

■ Under our evidentiary analysis, Edison could also recover against Charles under the indemnification contract which provided:

The Vendor shall be responsible for the proper execution and completion of the work and shall take all necessary precautions for prevention of injury to person or property in, about, or in connection with the work. The Vendor shall indemnify and save harmless the company, its officers, employees and agents, from all claims for damage to property or person (including death) suffered by him or his servants or agents while engaged in performing the work or while using any tools, equipment or materials furnished by the Company, and unless the negligence of the Company or of its servants or agents shall be a contributing cause thereof, from all claims for such damage suffered by the Company and by persons other than the Vendor or his servants and agents when caused in whole or in part by the negligence of the Vendor or of his servants or agents in doing the work. When damage to the property of the Company or to the property of persons (including death) of such persons other than the Vendor or his servants or agents is caused by the joint negligence of the Vendor or its servants or agents and of the Company or its servants or agents,

liability for the payment thereof shall be shared equally by the Vendor and the Company. The Vendor shall assume the defense of all actions at law or in equity which may be brought against the Company for damages for which the Vendor is liable hereunder.

Since Edison was only vicariously liable, it could not have contributed to the accident nor been jointly negligent. Charles' interpretation of the contract is at odds with the facts and common sense. Contracts, where possible, are to be construed to reach a sensible result. *Clark v. State Street Trust Co.*, 270 Mass. 140, 169 N.E. 897 (1930).

We also find Charles' reliance on *Boott Mills v. Boston & Maine Railroad*, 218 Mass. 582, 106 N.E. 680 (1914), misplaced. In *Western Union Telegraph Co. v. Fitchburg Gas and Electric Light Co.*, 334 Mass. 587, 137 N.E.2d 459 (1956), the court specifically held that *Boott Mills* did not apply where there was an indemnity contract.

In *Boott Mills v. Boston & Maine Railroad*, 218 Mass. 582, 106 N.E. 680, it was held by a divided court that where one has paid a judgment in a death action he cannot recover the whole or any part of the damages thus paid from another who contributed to the wrongful conduct on which the judgment was founded. In other words the court held that the principle laid down in *Gray v. Boston Gaslight Co.*, 114 Mass. 149, had no application to a statutory action for death. There was no contract of indemnity involved in the *Boott Mills* case. We see no valid reason why parties even with respect to liability for death under our statutes may not enter into a contract of reimbursement of the sort here involved. We are not disposed to apply the principle of the *Boott Mills* case to one like the present.

137 N.E.2d at 461–62.

Charles attempts to avoid the sound evidentiary basis for both common law and contractual indemnity by focusing on the charge and the wording of a jury interrogatory. It argues that one part of the instruction on Edison's putative liability was based on its personal negligence, separate and apart from that of Charles. We think a fair reading of the entire instruction shows that Edison's liability was couched in terms of a nondelegable duty to the public and vicarious liability. The trial judge clearly so intended because he ruled prior to giving the charge that "any liability incurred by Edison would entitle Edison to indemnity from Charles as a matter of law."

The jury question was:

Disregarding any negligence you may find on the part of Paul Garbincius or on the part of the defendant Charles Contracting Co., Inc., what was the amount of the negligent culpability of defendant Boston Edison on a scale of from $5,000.00 to $200,000.00? $100,000

The Massachusetts death statute combines both compensatory and punitive damages. *Bullard v. Central Vermont Railway, Inc.*, 565 F.2d 193 (1st Cir. 1977). Charles ignores the evidence and the peculiarity of the Massachusetts death statute by arguing that this question meant that the jury had to find personal negligence by Edison. Perhaps the question could have been worded better but, in light of the instructions as to the basis of Edison's liability, it seems clear to us that the jury was being asked to determine Edison's liability for damages on the basis of its own vicarious liability, disregarding any negligence on the part of the other parties. The jury found that Edison had failed to fulfill its nondelegable duty to the plaintiff; it could not have found on these facts that Edison's negligence was personal and separate from that of Charles.

■ Charles' contention that Edison's abstaining from inspecting the site over the weekend was "negligence [that was] a contributing cause" to the loss is misplaced. Where Charles undertook, as between the parties, full responsibility for safeguarding the work, and to indemnify in case of failure, it had no basis for evading its responsibility by complaining that Edison failed to police its performance. *Cf. Martin v. Maintenance Co., Inc.*, 588 F.2d 355, 359 (2d Cir. 1978).

*The Wording of the Special Question on the Comparative Negligence of the Parties*

Question 9 asked (and was answered) in pertinent part:

Assuming that the negligence which caused the accident totals one hundred percent, what percent of the total causal negligence is attributable to:

| | |
|---|---|
| Boston Edison Company: | 35% |
| Charles Contracting Co., Inc.: | 60% |
| Paul Garbincius: | 5% |

Defendants claim that it was error to have the jury compare the negligence of the decedent with the combined negligence of the two defendants. They assert that decedent's negligence should have been computed against each defendant separately and, since this was not done, the reduction in damages as to each was erroneous. This argument simply does not make sense. The accident happened because, as the jury found, the measures taken to warn of the excavation and guard against its danger were not adequate. The warning system consisted of planks at the excavation, wooden horse barricades and flashing lights. It was against the adequacy of this warning system that decedent's conduct had to be compared. There was no way that it could have been measured against each defendant.

Realizing, perhaps, that logic and common sense do not favor them, defendants seek to entangle us in the bramblebush of the Massachusetts death statute as modified by its comparative negligence statute. The argument, as we understand it, is based on the premise that, since the Massachusetts wrongful death statute in effect at the time was punitive, each tortfeasor must be punished and the negligence of plaintiff must be assessed against each separately. This is not the first time that we have encountered an attempt to use the Massachusetts death statute as a shield against negligence liability. In *Bullard v. Central*

*Vermont Railway, Inc.*, 565 F.2d at 199, we stated:

In the event of death, however, the damages awarded under Massachusetts law are, according to Central Vermont, transformed into a "fine" or "punitive damages." But the appellant places too much reliance on the Supreme Judicial Court's recognition of the punitive aspect of damages under the wrongful death statute. The court has also recently emphasized that "while there are aspects of the statute that are penal, it 'has compensatory features and a remedial function' as well." *Mone v. Greyhound Lines, Inc.*, Mass., 331 N.E.2d 916, 917, 1975 Mass. Adv.Sh. 2326, 2329 n.4, *quoting Macchiaroli* [*v. Howell*, 294 Mass. 144, 200 N.E. 905] *supra.* The court has also held that the right of action for wrongful death springs from the common law, not statute. *Gaudette v. Webb*, 362 Mass. 60, 71, 284 N.E.2d 222 (1972). At bottom, then, a wrongful death action is a common law method of redressing a personal wrong. From the plaintiff's viewpoint, the damages awarded are compensatory, just as are those awarded in an ordinary negligence action. We therefore attribute no force to the distinction which Central Vermont seeks to draw between "punitive" and "compensatory" damages.

Once the plaintiff's damages are viewed as compensatory, the way out of the bramblebush without getting entangled on the thorns of semantics is clear. Plaintiff's recovery is to be reduced by the amount of decedent's negligence, which was done here.

Defendants also argue that the comparative negligence statute in effect at the time [3] mandates an allocation of decedent's negligence against each defendant. They seize upon the phrase "if such negligence was not as great as the negligence of the *person* against whom recovery is sought," as a mandate that each defendant must be

---

**3.** Contributory negligence shall not bar recovery in any action by any person or legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made.

Mass.Gen. Laws ch. 231, § 85, as amended by St.1969, ch. 761, § 1.

1179

treated separately. This rigid formalism was rejected by the Massachusetts courts in *Graci v. Damon*, 374 N.E.2d 311, 1978 Mass. App.Ct.Adv.Sh. 273, *aff'd*, 383 N.E.2d 842, 1978 Mass.Adv.Sh. 3129. The court thoroughly reviewed the basis and history of the 1969 comparative negligence statute, compared it with its Wisconsin model and the statutes in other states and concluded:

> This is an appropriate occasion to use G.L. c. 4, § 6, Fourth, which provides, among other things, that "words importing the singular number may extend and be applied to several persons or things." And we thus construe "person" in the 1969 statute to mean "persons." *Commonwealth v. Montecalvo*, 367 Mass. 46, 49, 323 N.E.2d 888 (1975). This interpretation has the added advantage that it allows all plaintiffs in actions arising from and after January 1, 1971, the effective date of the 1969 statute, to be treated more nearly equally. See *Packard Clothes Inc. v. Director of the Div. of Employment Sec.*, 318 Mass. 329, 335–336, 61 N.E.2d 528 (1945). Also, this interpretation makes it unnecessary for the courts to deal with two sets of complexities, one of which would be applicable only to actions arising in the three year period between January 1, 1971, and January 1, 1974, the effective dates of the 1969 statute and the 1973 statute,[4] respectively.

374 N.E.2d at 318.

We find this reasoning persuasive and conclusive.

*Affirmed.*

---

**4.** Contributory negligence shall not bar recovery in any action by any person or legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the total amount of negligence attributable to the person or persons against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made. In determining by what amount the plaintiff's damages shall be diminished in such a case, the negligence of each plaintiff shall be compared to the total negligence of all persons against whom recovery is sought. The combined total of the plaintiff's negligence taken together with all of the negligence of all defendants shall equal one hundred per cent.