RETAILERS COMMERCIAL AGENCY, INC., petitioner.

GEORGE I. SHORE *vs.* RETAILERS COMMERCIAL AGENCY, INC.

Suffolk.    April 4, 1961. — May 1, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Libel and Slander. Practice, Civil,* Exceptions: contents of bill. *Evidence,* Presumptions and burden of proof.

A certain bill of exceptions containing some six out of twenty-seven pages in question and answer form was deemed by this court to comply substantially with the requirement of G. L. c. 231, § 113, that it be reduced to writing "in a summary manner." [516–517]

A defamatory credit report furnished by a mercantile agency to a particular subscriber having a business interest in the information in the report is conditionally privileged. [520]

The plaintiff in an action for libel has the burden of proving that a conditional privilege of the defendant has been abused and so lost. [520]

A conditional privilege to make a defamatory statement may be abused and so lost by the person making the statement even though there is no actual malice on his part. [520–521]

The conditional privilege attaching to defamatory statements in a credit report furnished by a mercantile agency to an interested subscriber is abused and so lost if the statements are made recklessly or without reasonable grounds and thus without good faith, but not if the statements are merely made negligently. [521–522]

In an action for libel by the subject of a credit report against a mercantile agency which had furnished the report to an interested subscriber, findings were warranted that certain false statements in the report concerning bankruptcy and a criminal record of the plaintiff, matters susceptible of precise verification, were made recklessly, without reasonable

grounds for believing them to be true, and that the conditional privilege of the defendant respecting the statements had been abused and so lost. [522-523]

Rulings given at the request of the plaintiff in an action for libel concerning certain conditionally privileged defamatory statements made by the defendant, that the defendant had lost the privilege since the statements were false and that the defendant, not having offered any proof of the truth of the statements, had "lost the benefit of any defences . . . and failed to make out a defence under . . . G. L. c. 231, § 92," were erroneous and prejudicial to the defendant. [523]

Petition, filed in this court on May 27, 1959, to establish a bill of exceptions in the following described action.

Tort. Writ in the Superior Court dated December 3, 1956.

The action was heard by *Wisnioski, J.*, who found for the plaintiff. A bill of exceptions by the defendant was disallowed by the judge.

*Claude R. Branch,* (*Daniel F. Featherston, Jr.,* with him,) for Retailers Commercial Agency, Inc.

*Paul R. Sugarman,* (*Haskell A. Lampke,* with him,) for Shore.

## I.

### Petition to Establish the Truth of Exceptions.

Spalding, J. This is a petition to establish the truth of exceptions alleged to have been taken by the defendant in the case of *Shore* v. *Retailers Commercial Agency, Inc.* G. L. c. 231, § 117. The petition was referred to a commissioner who reported that the exceptions set forth in the bill were "conformable to the truth." This conclusion is not challenged. The only issue that need concern us is whether the exceptions have been "reduced to writing in a summary manner" as required by G. L. c. 231, § 113. See *Western Union Tel. Co.* v. *Fitchburg Gas & Elec. Light Co.* 334 Mass. 587, 593. The transcript of 323 pages has been reduced in the bill to twenty-seven pages, about six of which are in question and answer form. Perhaps further condensation would have been possible but the recitals in question and answer form were not, in the circumstances, excessive and, as the commissioner found, a reduction of such testimony to narrative form would not have mate-

rially shortened the bill. We are of opinion that there has been substantial compliance with the ''summary manner'' requirement of the statute. The exceptions, therefore, are established. See *Clemens Elec. Mfg. Co.* v. *Walton,* 173 Mass. 286, 295–296; *Conrad* v. *Mazman,* 287 Mass. 229, 237–238; *Zacharer* v. *Wakefield,* 291 Mass. 90, 92–93. Compare *Graustein, petitioner,* 305 Mass. 568, 569; *Rines, petitioner,* 331 Mass. 714, 719–720.

## II.

### THE MERITS.

This is an action of tort for libel arising out of a credit report made by the Retailers Commercial Agency, Inc. (defendant), to Modern Funding Corporation (Modern). At a jury waived trial the judge found for the plaintiff in the amount of $10,000.

There was evidence of the following. In March, 1956, the plaintiff, doing business under the name of the Mortgage Service Bureau, got in touch with one Vogel to see if Modern would use the plaintiff's services as a mortgage broker. The plaintiff would submit mortgages to Modern and, if they were approved, Modern would supply funds for the mortgages and pay him a commission. Vogel, as the local manager of Modern, a New York corporation,[1] had the duty of receiving and processing applications for mortgages, of passing on the value of property and the financial responsibility of applicants, and of servicing the mortgages. He received authorization from Rothman, the president of Modern, to do business with the plaintiff.

During 1956, there was an agreement in effect, between Modern and the defendant, in which the defendant undertook to make credit reports on request. Sometime prior to August, 1956, Vogel asked Nolan, a manager of the defendant, to make a report on the plaintiff. Early in August, Vogel received such a report, dated August 1, 1956, which stated that the plaintiff's net worth was $15,000; that his

---

[1] Vogel was actually manager of Modern Funding Corporation of Boston, which was a branch of Modern.

annual earned income was $7,500; that he had failed in business or had been through bankruptcy; that a Waltham bank reported that he had had a small loan which was an "undesirable account"; that "[e]xtreme caution should be used . . . in dealing with . . . [him]" as there had been "48 inquiries [concerning the plaintiff] in six mos. time," and "116 special inquiries . . . due to unethical business practices," when he was in the real estate business; that he had been arrested and charged with "debt pooling, larceny of over $100," and with "being a common and notorious thief"; and that he had "pleaded innocent" to a complaint of larceny of over $100. Upon receiving this report, Vogel communicated with the plaintiff and disclosed its contents. Vogel knew that "the whole subject was confidential . . . because . . . there was the legend 'confidential' printed right on the report." He did not, however, specifically know that he was not supposed to divulge the contents of the report to the person inquired about.

Subsequently, the plaintiff satisfied Vogel that the report was untrue and inaccurate in several respects, and Vogel continued to do business with him. Vogel told the plaintiff that the report would not be shown to Rothman because "that would be the end of any possible deal that we'd ever have, as between . . . Rothman, Modern . . . and [Vogel]." Vogel did, however, point out to the defendant's manager, Nolan, those items which the plaintiff contended were erroneous, and in the middle of September, 1956, the defendant supplied a second report which differed in several material respects from the first. In it the plaintiff's net worth was reported as $100,000–$150,000, instead of $15,000; his income was raised from $7,500 to $35,000–$40,000; the reference to the "undesirable" loan account was deleted, as were the warning to use extreme caution in dealing with him and the reference to inquiries due to unethical business practices. The plaintiff's court record was changed to indicate that the plaintiff pleaded nolo contendere to a larceny indictment, which was dismissed, the plaintiff agreeing "to make restitution of $448." At the

bottom of the report was written "See report dated 8-1-56."

Subsequently Vogel went to New York and showed Rothman the second report; and upon seeing the reference to the first report, Rothman asked to see it. Vogel was then instructed to cease doing business with the plaintiff, but contrary to these instructions he put through several more applications prior to February 1, 1957, when he stopped working for Modern.

The declaration alleged that the defendant falsely and maliciously published defamatory information about the plaintiff in the first (August 1) report, the substance of which has already been set forth. The defendant does not contend that this report could not have been found to be defamatory. Rather it argues that the report was conditionally privileged, and that no abuse has been shown. Hitherto this court has never decided whether a report made by a mercantile agency in the circumstances existing here was qualifiedly privileged. There is, to be sure, a statement in the case of *Colby Haberdashers, Inc.* v. *Bradstreet Co.* 267 Mass. 166, 169, to the effect that such a report was privileged; but that statement was not necessary to the decision and was dictum. By the great weight of authority a report made by a mercantile agency to a particular subscriber whose business interest is involved is conditionally privileged.[1] The rule is otherwise in England and in a few States.[2]

---

[1] *Erber & Stickler* v. *R. G. Dun & Co.* 12 Fed. 526, 530 (C. C. Ark.). *Trussell* v. *Scarlett*, 18 Fed. 214, 216 (C. C. Md.). *Locke* v. *Bradstreet Co.* 22 Fed. 771, 773 (C. C. Minn.). *Hooper-Holmes Bureau, Inc.* v. *Bunn*, 161 F. 2d 102, 104 (5th Cir.) (applying Florida law). *Watwood* v. *Stone's Merc. Agency, Inc.* 194 F. 2d 160, 161 (Ct. App. D. C.), cert. den. 344 U. S. 821. *H. E. Crawford Co.* v. *Dun & Bradstreet, Inc.* 241 F. 2d 387, 393 (4th Cir.) (applying North Carolina law). *Pollasky* v. *Minchener*, 81 Mich. 280, 283–284. *Mitchell* v. *Bradstreet Co.* 116 Mo. 226, 236–240. *King* v. *Patterson*, 49 N. J. L. 417, 424–432. *Ormsby* v. *Douglass*, 37 N. Y. 477, 478–479. *Cullum* v. *Dun & Bradstreet, Inc.* 228 S. C. 384, 388. *Bradstreet Co.* v. *Gill*, 72 Texas, 115, 119–121. *Barker* v. *Retail Credit Co.* 8 Wis. 2d 664. *Bradstreet Co.* v. *Carsley*, Montreal L. R. 3 Q. B. 83, 111–114. *Robinson* v. *Dun*, 24 Ont. App. 287. *Fitzsimons* v. *Duncan & Kemp & Co. Ltd.* [1908] 2 Ir. R. 483, 494–495. See Harper and James, Torts, § 5.26; Prosser on Torts (2d ed.) p. 617; Restatement: Torts, § 595, comment g.

[2] *Johnson* v. *Bradstreet Co.* 77 Ga. 172. *Pacific Packing Co.* v. *Bradstreet Co.* 25 Idaho, 696, 704–705. *Macintosh* v. *Dun*, [1908] A. C. 390, 400–401.

We are of opinion that reports made by a mercantile agency to an interested subscriber should be conditionally privileged.  Those about to engage in a commercial transaction like to know something about the persons with whom they are dealing.  Often they are unable to get that information themselves and must obtain it through mercantile agencies.  In furnishing such information the agencies are supplying a legitimate business need and ought to have the protection of the privilege.  Without such protection few would undertake to furnish the information, and the cost would be high, if not prohibitive.  For a good discussion of the reasons supporting the privilege see Smith, Conditional Privilege for Mercantile Agencies, 14 Col. L. Rev. 187, 296, 306–310.  We are not to be understood as holding that there is a privilege where information is published by the agency generally to subscribers having no particular interest in the report.  See *King* v. *Patterson,* 49 N. J. L. 417; *Sunderlin* v. *Bradstreet,* 46 N. Y. 188, 192–193; *Hanschke* v. *Merchants Credit Bureau,* 256 Mich. 272; *Mitchell* v. *Bradstreet Co.* 116 Mo. 226, 239; Prosser, Torts (2d ed.) p. 617; Restatement: Torts, § 595, comment g.

A conditional privilege is destroyed if abused.  On this issue the burden is on the plaintiff.  *Bander* v. *Metropolitan Life Ins. Co.* 313 Mass. 337, 344.  *Galvin* v. *New York, N. H. & H. R.R.* 341 Mass. 293, 296–297.  The defendant contends that the privilege could only be abused by actual or express malice, and having failed to present any evidence of such malice, the plaintiff cannot recover.  Thus, it argues, the judge erred in denying the defendant's thirteenth request that a finding for the defendant was required.  It is well established that proof of actual or express malice will destroy a qualified privilege.  See *Galvin* v. *New York, N. H. & H. R.R., supra,* at p. 297, and cases cited.  If such malice were to be required here, the defendant's request should have been granted, for there was no evidence that would warrant a finding of actual or express malice.  But, as noted in the *Galvin* case, there may be an abuse of a qualified privilege even though no actual malice or ill will

is shown. In that case it was held that a conditional privilege can be abused by an "unnecessary, unreasonable or excessive publication of the defamatory matter." 341 Mass. 293, 297. Although there is no contention here that the publication was excessive, the plaintiff argues that an abuse can be shown in other ways not amounting to ill will.

It has long been recognized that an absence of good faith may tend to prove ill will and thus actual malice. See *Billings* v. *Fairbanks,* 139 Mass. 66, 69; *Christopher* v. *Akin,* 214 Mass. 332, 334; *Wormwood* v. *Lee,* 226 Mass. 339, 341; *Childs* v. *Erhard,* 226 Mass. 454, 456–457. But whether the lack of good faith is said to be symptomatic of ill will, or an abuse in itself, it is clear that there is no reason to protect such communications. A lack of good faith may be shown by recklessness. As said by Chief Justice Gray, in *Gott* v. *Pulsifer,* 122 Mass. 235, 239, "Malice in uttering false statements may consist either in a direct intention to injure another, or in a reckless disregard of his rights and of the consequences that may result to him." See *Robinson* v. *Van Auken,* 190 Mass. 161, 166; *A. B. C. Needlecraft Co. Inc.* v. *Dun & Bradstreet, Inc.* 245 F. 2d 775, 777 (2d Cir.); *Mil-Hall Textile Co. Inc.* v. *Dun & Bradstreet, Inc.* 160 F. Supp. 778 (S. D. N. Y.); *Pecue* v. *West,* 233 N. Y. 316, 322–323; *Robinson* v. *Dun,* 24 Ont. App. 287, 289. Moreover, if a defendant makes a report which he asserts to be true (see *Doane* v. *Grew,* 220 Mass. 171, 178–180), when he has no reasonable grounds or probable cause for so doing, it could be found that he has not acted in good faith, and has abused the privilege. *Wormwood* v. *Lee,* 226 Mass. 339, 341. See *Brewer* v. *Second Baptist Church of Los Angeles,* 32 Cal. 2d 791, 797; *Ranson* v. *West,* 125 Ky. 457, 463; *Simon* v. *Robinson,* 221 Md. 200, 206; *Toothaker* v. *Conant,* 91 Maine, 438, 439–440; *Hebner* v. *Great No. Ry.* 78 Minn. 289, 295; *Cline* v. *Holdrege,* 122 Neb. 151, 153; *Briggs* v. *Garrett,* 111 Pa. 404, 414; Restatement: Torts, §§ 600–602. There is no social utility in reports that are made recklessly or without reasonable grounds. The injury to the subject of the report can be great and the person receiving the report gains nothing.

The plaintiff argues that the real test should be whether the defendant has used reasonable care. That negligence may destroy the privilege finds some support in the authorities. *Douglass* v. *Daisley,* 114 Fed. 628, 636–637 (1st Cir.). *Berry* v. *Moench,* 8 Utah 2d, 191. See Prosser, Torts (2d ed.) pp. 628–629; Hallen, Character of Belief Necessary for the Conditional Privilege in Defamation, 25 Ill. L. Rev. 865, 875–876; Restatement: Torts, § 595, comment g. This view, although having something to commend it, has not generally been accepted by the courts, and with good reason, for it would place undue limitations on communications which the law seeks to protect. See *H. E. Crawford Co.* v. *Dun & Bradstreet, Inc.* 241 F. 2d 387, 397–398 (4th Cir.). As the New York Court of Appeals said in *Pecue* v. *West,* 233 N. Y. 316, 322, the conduct which would destroy a qualified privilege must be "more than mere negligence or want of sound judgment" and there must be "more than hasty or mistaken action." The facts that these communications are confidential and that great speed may be required in their preparation militate against a rule that would destroy the privilege by proof of ordinary negligence.

In the light of these principles, a finding for the defendant was not required. It has been already noted that there were substantial differences between the first and second reports. And, contrary to both reports, there was evidence that the plaintiff had never failed in business or gone through bankruptcy. The estimates of his earnings and net worth were much less than those later reported. There was evidence that the statement of the plaintiff's court and business records was inaccurate and misleading. The facts as to the plaintiff's bankruptcy and criminal record were susceptible of precise check. We need not decide the effect of the misreporting in other respects, for as to these verifiable matters we are of the opinion that the finder of fact could in any event conclude that the defendant made the first report recklessly, without reasonable grounds for believing it was true. If this was the case (and the trier of

fact could so find) the privilege was lost.   The defendant's thirteenth request, therefore, was rightly denied.

The judge, subject to the defendant's exceptions, granted the plaintiff's fourth and thirteenth requests which were as follows: "4.   Any privilege that the defendant may have had was lost and constitutes no defence, as the report . . . [the August 1 report] contained false statements of and concerning the plaintiff."   "13.   The evidence warrants a finding that the defendant, having rested without offering any proof as to the truth of the statements alleged by the plaintiff to be false, derogatory and libelous, has lost the benefit of any defences it may have had and failed to make out a defence under the provisions of G. L. c. 231, § 92." The granting of these requests was erroneous and the defendant's exceptions must be sustained.   "If the occasion . . . is a privileged one and the defendant . . . was acting under the privilege created by the occasion, a defence is made out, *even if what he said was not in fact true*" (emphasis supplied).   *Doane* v. *Grew,* 220 Mass. 171, 176. Were the rule otherwise the privilege would afford little or no protection.

The defendant's exceptions to evidence, in view of our disposition of the case, are waived.   As the proof may be different when the case is retried, we deem it unnecessary to discuss the defendant's contention that the plaintiff, if entitled to prevail, may recover only nominal damages.

*Exceptions sustained.*