DEXTER'S HEARTHSIDE RESTAURANT, INC., & another[1] vs.
WHITEHALL COMPANY.

Essex. January 14, 1987. — May 26, 1987.

Present: PERRETTA, QUIRICO, & KASS, JJ.

*Libel and Slander. Damages*, Libel. *Constitutional Law*, Libel and slander.
*Privileged Communication. Malice. Practice, Civil*, Summary judgment.

An allegation by the principal stockholder and officer of a restaurant corpo-
ration that, by reason of an alcoholic beverage wholesaler's reporting
the name of the restaurant for inclusion on a delinquent accounts list
maintained by the Alcoholic Beverages Control Commission, he "person-
ally suffered great anguish of mind and embarrassment" and sustained
"great damage to his personal reputation and standing in the community,"
failed to state a claim of defamation for which the officer could recover
individually. [218-219]

In a libel action brought by a restaurant corporation and its principal stock-
holder and officer against a wholesaler of alcoholic beverages which,
in the course of discharging its reporting obligation imposed by G. L.
c. 138, § 25, erroneously reported the restaurant as a delinquent account
to the Alcoholic Beverages Control Commission, summary judgment
for the defendant was properly ordered on the restaurant's claim where
the defendant had a conditional privilege arising from its statutory duty
under the alcoholic beverages control statute, and where the summary
judgment materials produced by the restaurant provided no facts from
which might be inferred any ulterior purpose which could remove the
defendant's statement from the protection of the privilege. [219-223]

CIVIL ACTION commenced in the Superior Court Department
on October 30, 1984.

A motion to dismiss was heard by *Peter F. Brady*, J., and
a motion for summary judgment was heard by *William Highgas,
Jr.*, J., sitting under statutory authority.

*Howard P. Blatchford, Jr.*, for the plaintiffs.
*James C. Heigham* for the defendant.

---

[1] H. Clark Dexter, Jr.

Kass, J. Whitehall Company, the defendant, is a wholesaler of alcoholic beverages. In the course of discharging a reporting obligation imposed by G. L. c. 138, § 25 (concerning customers whose accounts are not fully paid within sixty days),[2] Whitehall erroneously reported "Dexter's Hearthside Rest." (Hearthside) as a delinquent account to the Alcoholic Beverages Control Commission (ABCC). Informed of its mistake, Whitehall within six days filed with the ABCC a statement that the Hearthside account was paid in full. Both the original listing and the correction were on ABCC forms.

Hearthside and its principal stockholder and officer, H. Clark Dexter, Jr. (Dexter), brought a libel action based on the mistaken listing. As to Dexter, the action foundered on a motion to dismiss for failure to state a claim for which relief can be granted (Mass.R.Civ.P. 12 [b] [6], 365 Mass. 755 [1974] ), and Hearthside met a similar fate on a motion for summary judgment. Mass.R.Civ.P. 56, 365 Mass. 824 (1974). Both Dexter and Hearthside have appealed from judgments of dismissal.

1. *Dexter's claim.* In the complaint, Dexter describes himself as "an officer, major stockholder, director, and principal operations person" of Hearthside, i.e., the restaurant corporation. By reason of the allegedly libelous publications about Hearthside, Dexter claims to have "personally suffered great anguish of mind and embarrassment" and sustained "great damage to his personal reputation and standing in the community." An officer of a corporation may not recover damages for a libel published about the corporation. *Kesner* v. *Liberty Bank & Trust Co.*, 7 Mass. App. Ct. 934, 935 (1979). *Gilbert Shoe Co.* v. *Rumpf Publishing Co.*, 112 F. Supp. 228, 229 (D. Mass. 1953). To be actionable a defamatory statement must be "of and concerning" the individual plaintiff. *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 288, 292 (1964). *Hanson* v. *Globe Newspaper Co.*, 159 Mass. 293, 294 (1893). *New England Tractor-Trailer Training, Inc.* v. *Globe Newspaper Co.*, 395 Mass. 471, 473-474 (1985). Restatement (Second) of Torts § 613 (1977).

[2] See 204 Code Mass. Regs. § 2 (1978).

Publishing the name "Dexter's Hearthside Rest." for inclusion on the ABCC delinquent accounts list cannot reasonably be interpreted as a reference to Dexter as an individual. Cf. *New England Tractor-Trailer Training, Inc.* v. *Globe Newspaper Co.*, 395 Mass. at 474-481. Dexter's use of his name in connection with the restaurant does not make Whitehall's reference on its report ambiguous. The ABCC delinquent account list has a limited circulation among persons who are themselves licensees of the ABCC, i.e., retailers, wholesalers, manufacturers, and importers of alcoholic beverages. G. L. c. 138, § 25. 204 Code Mass. Regs. § 2.13 (2) (1978) and (10) (1980). That particular class of readers understands that the list refers to businesses licensed to deal in alcoholic beverages. Cf. *Sharratt* v. *Housing Innovations, Inc.*, 365 Mass. 141, 145 (1974); *Godbout* v. *Cousens*, 396 Mass. 254, 263-264 (1985). A motion to amend the complaint offered by Dexter failed to surmount the inherent invalidity of the claim. It was rightly denied. See *Bass River Lobsters, Inc.* v. *Smith*, 7 Mass. App. Ct. 197, 198 (1979).

2. *The corporate claim.* Whitehall's motion for summary judgment against Hearthside rested on the pleadings, a deposition of Dexter, and several exhibits attached to the deposition. Those exhibits included the offending reports of delinquency and restoration of Hearthside to fiscal grace which were, in accordance with regulations, made upon forms furnished by the ABCC. 204 Code Mass. Regs. § 2.13. Dexter, himself, was angry and mortified, but within the liquor trade the incident did not cause a ripple. As to one shipment, which arrived before publication of the notice of Hearthside's removal from the delinquent list,[3] the restaurant was obliged, in accordance with law,[4] to pay with a certified check. Thereafter, Hearthside

---

[3] The delinquency list is revised on a daily basis. 204 Code Mass. Regs. § 2.13 (10) (1980).

[4] The avowed purpose of G. L. c. 138, § 25, expressed with a touch of irony in *James J. Sullivan, Inc.* v. *Cann's Cabins, Inc.*, 309 Mass. 519, 521 (1941), is to "avoid the evils believed to result from the control of retail liquor dealers by manufacturers, wholesalers, or importers through the power of credit."

dealt with liquor wholesalers on normal credit payment terms. Hearthside stopped buying from Whitehall by its own choice. The publication range of the delinquency list, as we have noted, is very limited. No customer ever mentioned the matter to Dexter or, to his knowledge, to any employee of Hearthside.

The argument urged by Whitehall in the Superior Court, and presumably the ground for allowance of the motion for summary judgment, was that, in the absence of any showing of pecuniary loss, Hearthside could not maintain the libel action. The problem is not quite so simple. Corporations, stereotypically bloodless and soulless, may not recover for hurt feelings, but it was early recognized that a corporation might recover for damage to its reputation for conducting its affairs honestly or competently without establishing out-of-pocket damages. *Finnish Temperance Soc. Sovittaja* v. *Finnish Socialistic Publishing Co.*, 238 Mass. 345, 353-354 (1921); *South Hetton Coal Co.* v. *North-Eastern News Assn.*, 1 Q.B. 133, 141 (1894). See more recently *Grande & Son* v. *Chace*, 333 Mass. 166, 168-169 (1955); *Sharratt* v. *Housing Innovations, Inc.*, 365 Mass. 141, 148 (1974); *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 861 (1975); *Ricciardi* v. *Latif*, 3 Mass. App. Ct. 714, 714-715 (1975). Recovery, however, is limited to actual damages. *Stone* v. *Essex County Newspapers, Inc.*, supra at 860. Punitive damages are prohibited. G. L. c. 231, § 93. *Ellis* v. *Brockton Publishing Co.*, 198 Mass. 538, 543 (1908); the *Stone* case, supra, at 861; *Liquori* v. *Republican Co.*, 8 Mass. App. Ct. 671, 679 (1979). Although exemplary or punitive damages are foreclosed, it is possible to recover compensatory damages. In the case of an individual, compensatory damages comprehend mental anguish, embarrassment, and humiliation; in the case of a corporation compensatory damages signify the more abstract damage to reputation. There need be no evidence which assigns a dollar value to the injury, but courts have "a special duty of vigilance in charging juries and reviewing verdicts to see that damages are no more than compensatory." *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. at 861.

In a case that had much in common with the one before us, the Supreme Court held that a plaintiff can, consistently with the First Amendment to the United States Constitution, recover presumed damages when the defamatory statements do not involve matters of public concern. *Dun & Bradstreet, Inc.* v. *Greenmore Builders, Inc.*, 472 U.S. 749, 763 (1985).[5] That case involved a credit report which mistakenly described the plaintiff, a general contractor, as having filed a petition in bankruptcy. The false report, which had circulated to five subscribers, was corrected within eight days. Credit reports of the sort involved, the Court concluded, deal with the business interests of the speaker, the credit reporting service, and its business audience — which, in the particular case, was a narrow one. It could not be seen as a matter of public concern, involving public affairs, without trivializing that idea, and the First Amendment in the bargain. See *id.* at 758-762. Compare *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323 (1974), which, in a matter of public concern, prohibited awards of presumed and punitive damages on account of the libel of a private person[6] unless that person could show knowledge of falsity or reckless disregard for the truth.

That Whitehall in the instant case was bound by State law to report delinquent accounts could perhaps be said to coat its false statement with a veneer of public concern, but, as in *Dun & Bradstreet*, the subject of the libel was bereft of the stuff of public issues debate with which the First Amendment is concerned. The status of Hearthside's account with one of its purveyors is not an idea which implicates the Constitution.

By reason of its status as a private plaintiff (albeit a corporate one) and the circumstance that the alleged false statement *did not* involve an issue of public concern, Hearthside was not obliged to show out-of-pocket loss as a consequence of the libel. Its failure to do so was not a tenable basis for granting

[5] The opinion also permits recovery of punitive damages in private person defamation cases, but that additional scope has no bearing on a jurisdiction such as Massachusetts, where punitive damages are altogether proscribed.

[6] Contrasted with a public figure plaintiff of the sort involved in *New York Times Co.* v. *Sullivan*, 376 U.S. 254 (1964), and its progeny.

summary judgment to Whitehall. The judgment, however, may be affirmed because Whitehall's notice was protected by a qualified privilege. We may consider any ground which would support the judgment. *Pupecki* v. *James Madison Corp.*, 376 Mass. 212, 215 (1978). *Champagne* v. *Commissioner of Correction*, 395 Mass. 382, 386 (1985).

Publication becomes conditionally privileged "if the circumstances induce a correct or reasonable belief that . . . the recipient is one to whom the publisher is under a legal duty to publish . . . the matter" claimed to be defamatory. Restatement (Second) of Torts § 595 (1) (b) (1977). Whitehall, of course, was charged by G. L. c. 138, § 25, with a duty to publish the delinquency notice said to be defamatory. "A legal duty imposed for the protection of a particular . . . class of persons carries with it either an absolute or conditional privilege to make such defamatory imputations of another as are reasonably necessary to the performance of the legal duty." Restatement (Second) of Torts § 595 comment f. "In the case of a private citizen, the privilege arising from the legal duty is always conditional, and the proper purpose of the publisher in making the defamatory communication is a prerequisite to his protection." *Ibid.*

For example, an employer has a conditional privilege to disclose information which may turn out not to be true concerning an employee when the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job, e.g., letters of reference or evaluation. See *Doane* v. *Grew*, 220 Mass. 171, 176 (1915); *Vigoda* v. *Barton*, 348 Mass. 478, 485 (1965); *Bratt* v. *International Business Mach. Corp.*, 392 Mass. 508, 512-513 (1984). A private citizen has a qualified privilege to disclose defamatory information to the police regarding the commission of a crime. *Hutchinson* v. *New England Tel. & Tel. Co.*, 350 Mass. 188, 191 (1966). A witness at a hearing conducted by a joint management-union grievance board enjoys a qualified privilege in explaining a discharge. *Ezekiel* v. *Jones Motor Co.*, 374 Mass. 382, 386 (1978). Particularly pertinent to this case is the recognition in Massachusetts of a qualified privilege

for a credit report made by a private mercantile agency to a subscriber whose business is involved. *Retailers Commercial Agency, Inc., petitioner*, 342 Mass. 515, 519-520 (1961). See notes 1 and 2 in that opinion (at 520) for a survey of how the question was treated at the time in other jurisdictions. Whitehall's "credit report" fits comfortably into this category of protected communications. Whitehall was required by statute to produce the report and did not initiate publication for its own benefit.

Truth or falsehood is not material if there is no abuse of privilege or if no actual malice is shown. *Sheehan* v. *Tobin*, 326 Mass. 185, 190 (1950). Simple negligence, want of sound judgment, or hasty action will not cause loss of the privilege. *Retailers Commercial Agency, Inc., petitioner*, 342 Mass. at 522. Recklessness is the minimum level of misconduct. *Bratt* v. *International Business Mach. Corp.*, 392 Mass. at 514. Malice, which destroys the defense of privilege, must be taken to mean that the defamatory words, although spoken on a privileged occasion, were not spoken pursuant to the right and duty which created the privilege but were spoken out of some base ulterior motive. See *Doane* v. *Grew*, 220 Mass. at 177.

Hearthside, in the summary judgment materials, produced no evidence of malice by the defendant. Whitehall's computerized billing system was run by people who did not know Dexter and sent the report according to normal procedures. The record shows no facts from which an ulterior purpose of the defendants could be inferred. *Humphrey* v. *National Semiconductor Corp.*, 18 Mass. App. Ct. 132, 135 (1984). A party against whom summary judgment is sought is not entitled to a trial simply because he has asserted a cause of action to which state of mind is a material element. There must be some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim. *Ibid.*, citing *National Assn. of Govt. Employees, Inc.* v. *Central Bdcst. Corp.*, 379 Mass. 220, 231 (1979). At most, Whitehall made a mistake while fulfilling its statutory duty under the alcoholic beverage control statute. The qualified privilege remained intact.

*Judgments affirmed.*