Fecteau, J.

INTRODUCTION

Pursuant to Mass.R.Civ.P. Rule 56, defendants, Thayer & Associates, Inc. (“Thayer”), Shadowbrook Condominium Trust (“Shadowbrook”), Janet Dale, Alan Glassman, Ann Brickley, Andrew Goodwin, Walter Skubisz, Jeanne McBrine, Richard Person, Ellen Cunniff, Mathew Hall, and Dwight Johnson, move this court to issue summary judgment in their favor. This action arises out of an Agenda notice dated March 20, 1997, concerning a regularly scheduled meeting of the Shadowbrook Board of Trustees. The plaintiffs, Paul Papasodero (“Papasodero”), Valentino Papasodero, a minor, Alexander Papasodero, a minor, and Leonardo Sommerfield, a minor, have brought suit to recover actual and statutory damages against the defendants.
The plaintiffs’ claims against defendant Thayer are: (Count I) violation of G.L.c. 93, §49, Fair Debt Collection Act; (Count VI) violation of G.L.c. 93, §9 and 940 CMR 7.00-7.11, Mass. Atty. Gen’l Regs., Debt Collection Practices Regulations; (Count XI) violation of 15 U.S.C. §1692, et seq., the Fair Debt Collection Practices Act; and (CountXVI) intentional and/or negligent infliction of emotional distress
The plaintiffs’ claims against the defendants Ellen Cunniff, Mathew Hall and Dwight Johnson, all as employees of Thayer are: (Count II) violation of G.L.c. 93, §49, Fair Debt Collection Act; (Count VII) violation of G.L.c. 93, §9 and 940 CMR 7.00-7.11, Mass. Atty. Gen’l Regs., Debt Collection Practices Regulations; (Count XII) violation of 15 U.S.C. §1692, et seq., the Fair Debt Collection Practices Act; and (Count XVII) intentional and/or negligent infliction of emotional distress.
The plaintiffs’ claims against the defendant Shadowbrook are: (Count III) violation of G.L.c. 93, §49, Fair Debt Collection Act; (Count VIII) violation of G.L.c. 93, §9 and 940 CMR 7.00-7.11, Mass. Atty. Gen’l Regs., Debt Collection Practices Regulations; (Count XIII) violation of 15 U.S.C. §1692, et seq., Fair Debt Collection Practices Act; and (Count XVIII) intentional and/or negligent infliction of emotional distress. *685 The plaintiffs’ claims against the defendants Janet Dale, Jeanne McBrine, Richard Person, and Andrew Goodwin, all as Trustees of the Shadowbrook, are: (Count IV) violation of G.L.c. 93, §49 Fair Debt Collection Act; (Count IX) violation of G.L.c. 93, §9 and 940 CMR 7.00-7.11, Mass. Atty. Gen’l Regs., Debt Collection Practices Regulations; (Count XIV) violation of 15 U.S.C. §1692, et seq., Fair Debt Collection Practices Act; (Count XIX) intentional and/or negligent infliction of emotional distress.
The plaintiffs’ claims against the defendants Alan Glassman, Ann Brickley and Walter Skubisz, all as Trustees of Shadowbrook, are: (Count V) violation of G.L.c. 93, §49 Fair Debt Collection Act; (Count X) Violation of G.L.c. 93, §9 and 940 CMR 7.00-7.11 Mass. Atty. Gen’l Regs., Debt Collection Practices Regulations; and (Count XV) violation of 15 U.S.C. §1692, et seq., Fair Debt Collection Practices Act.
The plaintiffs’ claims against defendants Shadowbrook and Thayer include: (Count XXII) Negligence; (Count XXIII) Breach of Implied Covenant of Good Faith and Fair Dealing; and (CountXXTV) Breach of Fiduciary Duty. Finally, Papasodero’s claims against all defendants are: (Count XX) defamation; (Count XXI) invasion of privacy; and (Count XXV) loss of consortium by Valentino Papasodero, Alexander Papasodero and Leonardo Summerfield.
For the following reasons, defendants’ motion for summary judgment is ALLOWED in part and DENIED in part.

BACKGROUND

Papasodero is a resident of Shadowbrook in the unit known as 2-2 Shadowbrook Lane, Milford, Massachusetts. The Shadowbrook complex consists of 364 units. Mr. Papasodero was an owner of one of the units until he lost the same to a foreclosure sale for failure to pay condominium fees.[3] The case at bar arose as a result of the publication of an alleged defamatory Agenda notice dated March 20, 1997 (“Agenda”), which stated that the “Bad Debt” of “Papasodero” would be discussed at the regularly scheduled meeting of the Shadowbrook Board of Trustees. Specifically, the Agenda, as it relates to this case, stated as follows:
2. Executive Sessions Atty/Collection and Other Problems - 7:00-60 minutes
* Transition issues (Audit) (Management Contract) * (Staffing update) * Budgetary matters
* Status of reserve accounts (min. bal.) * Easement representation (research) * McGray letters
* Lawsuits (Unit Owner & Fire) * [Bad Debt] * Papasodero * Others * Young unit rehire
* Establishing Moving in/out charge (move/in billing letter) * Rules for mail distribution.
Plaintiffs filed their original complaint on March 20, 2000, which stated nineteen counts against the defendants. On May 9, 2000, Defendants filed an answer, with affirmative defenses. On the same date, plaintiffs filed a motion for leave to amend their complaint, alleging six additional causes of action, including defamation, invasion of privacy, negligence, breach of an implied covenant of good faith and fair dealing, breach of a fiduciary duty, and loss of consortium. On December 26, 2000, the Court allowed plaintiffs’ motion for leave to amend their complaint, on the condition that “if the amendments hereby allowed prove to be unrelated to the causes of action asserted in the original complaint, the court may consider the viability of the amendments upon motion by the defendants.”
On January 24, 2001, defendants timely filed their answer with affirmative defenses. On February 23, 2001, a hearing on defendants’ motion for summary judgment was held. Both parties were represented, but arguments were not presented on the six additional counts made by plaintiffs in their amended complaint. On March 30, 2001, this court granted defendants an additional 30 days in which to supplement their present papers to address these six new claims.[4]

DISCUSSION

A. Standard of Review

Summary judgment will be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). In assessing a Rule 56 motion, “(t]he evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.” Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 255 (1986) (quoted with approval in G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991)). Of course, “the nonmoving party may not simply rest on pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.” Correllas v. Viveiros, 410 Mass. 314, 317 (1991).

B. Personal Liability for the Individual Corporate Employees of Thayer and the Trustees of Shadowbrook

Under Counts II, IV, V, VII, IX, X, XII, XTV, XV, XVII and XIX, the plaintiffs seek to impose individual liability on three employees of- Thayer and the Trustees of Shadowbrook in their individual capacity. The plaintiffs’ claims for individual liability relate to the printing of the Agenda notice for the March 20, 1997 meeting. All of these counts fail, as there is no personal liability for the acts alleged in the complaint as a matter of law.
The individually named employees of Thayer, Ellen Cunniff, Matthew Hall, and Dwight Johnson are shielded from individual liability. The corporate veil should be lifted only “in rare particular situations in *686 order to prevent gross inequity.” My Bread Baking Company v. Cumberland Farms, Inc., 353 Mass. 614 (1968). Here, the plaintiffs fail to show the presence of “an element of dubious manipulation, contrivance, and finagling, such that corporate identities are confused and third parties cannot be quite certain with what they are déaling.” Evin v. Multicon Construction Corp., 30 Mass.App.Ct. 728 (1991). See also Searcy v. Paul, 20 Mass.App.Ct. 134, 139 (1985) (where the court held there was no basis to disregard the corporate fiction unless there is “flagrant disregard of corporate barriers” or fraud).
Thayer’s printing and distribution of the Agenda notice do not rise to the level of “flagrant disregard of corporate barriers” or fraud. See id. Further, it does not appear from the record that the individual employees of Thayer had any personal stake in whether Papasodero paid his condominium fees. It is clear that no individual employee of Thayer ever gave any indication to Papasodero or others residing in Shadowbrook, that they were dealing with anyone other than the Thayer corporation. The defendant contends that it sends all billing, correspondence and other notices on corporate letterhead or the letterhead of the condominiums which they represent. We have no reason to believe otherwise. Therefore, all the claims against the individual employees of Thayer must be dismissed.
It appears from the summary judgment record that the individual Trustees of Shadowbrook are responsible for the drafting, printing and distribution of the March 20, 1997 Agenda notice in their capacity as Trustees. Under the Shadowbrook Declaration of Trust recorded August 11, 1982 at Book 7530, Page 137, individual Trustees are protected from liability when fulfilling their Trustee’s obligations. The plaintiffs fail to establish claims that individually named Trustees denied Papasodero’s family access to the pool, maligned Papasodero’s reputation and interfered with Papasodero’s relationship with his new landlord. Papasodero’s claims regarding publication and distribution of the Agenda notice and collection of association fees, cannot be described as anything other than Trustees acting under the scope of their obligations to the association. Therefore, the individual actions against the Trustees must fail.
C. Defamation
As a threshold in this matter, this court must decide whether, as defendants claim, the plaintiffs are barred from bringing this action by the applicable statute of limitations. General Law chapter 260, §4, requires actions for libel be brought within three years of the accrual of the cause.of action. Plaintiffs filed their original complaint on March 20, 2000, three years to the day after the March 20, 1997 Agenda meeting was scheduled. Defendants contend that Papasodero's cause of action began to run prior to March 20, 1997, because the Agenda notice was distributed, or published, prior to the date the March 20, 1997 meeting was scheduled.
In a defamation case, the statute of limitations begins on the date of the publication of the defamatory statement. See Polchlopek v. American News Co., 73 F.Sup 309 (1st Cir. 1947). Publication generally occurs when a third person, other than plaintiff, is exposed to the slanderous writing. This is true regardless of any other dates that may appear on the defamatory material. McGlue v. Weekly Publications, 63 F.Sup. 744, 745 (1st Cir. 1946).
In this matter, the defendant has failed to produce evidence by affidavit or otherwise, that the notice was distributed prior to the date of the March 20, 1997 meeting. The plaintiff, on the other hand, produced affidavits of Stephen Weinstien, George Desmond, and Nunzio Bonanno that indicate the defamatory Agenda was received on March 20, 1997. Therefore, because there is a dispute of material fact regarding the date of publication, as a matter of law, defendants’ claim must be denied on this issue. Plaintiffs’ defamation claim (Count XX) is not bared by the statute of limitations.
Count XX of the plaintiffs’ complaint alleges that defendants defamed him by the publication of the Agenda notice. Defendants claim that the statements were reasonably necessary for the protection and furtherance of a legitimate business interest, and that the statements were true, amounting to a complete affirmative defense.
Defamation is the intentional or negligent publication to a third person, without privilege to do so, of a false statement of fact about another that results in harm to the other’s reputation. Restatement (Second) Torts §§558, 565, 566 (1977). To be defamatory the writing must hold up the plaintiffs to ridicule, scorn or contempt in a considerable and respectable class of the community and must not be privileged. Muchnick v. Post Publishing Co., 332 Mass. 304, 306 (1955). The test for whether a publication is defamatory is “whether, in the circumstances, the writing discredits the plaintiff in the minds of any considerable and respectable segment in the community.” Draghetti v. Chmielewski, 416 Mass. 808, 811(1994) (citations omitted).
A single word used to falsely describe the plaintiff may provide grounds for recovery. For example, a defendant may be liable for falsely describing a plaintiff as “dishonest, diseased, insane, or bankrupt.” See Disend v. Meadowbrook School, 33 Mass.App.Ct. 674 (1992). Liability may also be imposed for words, which are not inherently disparaging but have that effect when viewed in context. See Sharratt v. Housing Innovations Inc., 365 Mass. 141 (1974).
In applying this reasoning, the statements about the plaintiff, although not inherently disparaging, may have that effect when viewed in context. Contrary to the defendants’ assertions that the placement of an *687 asterisks (*) between the items on the Agenda dated, March 20, 1997, would not be enough to suggest to a reader that the words “(Bad Debt]’’ were connected to the word, “Papasodero,” a reasonable person reading the document may conclude that bad debt belonged to the adjacent name, Papasodero. In support of their claim, the plaintiffs have submitted affidavits, including an affidavit from Michael O’Brien, a former Shadowbrook Trustee. The affidavits indicate the Agenda notice may have served to discredit Paul Papasodero in the minds of considerable and respectable members of the community and that reasonable readers could conclude the term, [Bad Debt], referred to Paul Papasodero. See Draghetti, 416 Mass. 808 at 811.
In support of their argument, defendants cite to Foley v. Lowell Sun Publishing Co., 404 Mass. 9 (1989), where the Supreme Judicial Court found that a reasonable reader could not conclude that a newspaper was accusing the plaintiff of a crime, in a headline, “officer assault, two men charged.” However, Foley is distinguished from the facts in this case. In Foley, the defendant newspaper reporting the plaintiffs arrest, involved no defamatory connotation because the newspaper was not accusing the plaintiff of a crime, they were merely reporting an arrest made by authorities. Here, the words surrounding Papasodero could reasonably lead a reader to conclude that the “Bad Debt” belonged to Papasodero. The placement of an asterisk between the words does not sufficiently separate the items so that a reasonable reader could not conclude that defendants were accusing Papasodero of “(Bad Debt].” Accordingly, it is for a jury to decide whether a defamatory meaning was in fact conveyed. See Draghetti, 416 Mass. at 811 (holding that where a communication is susceptible of both a defamatory and non-defamatory meaning, a question of fact exists for the jury).
Defendants argue that, even if the statements were defamatory, they were made in a context that rendered them a conditional privilege. The Supreme Judicial Court has recognized that “a person may possess a conditional privilege to publish defamatory material if the publication is reasonably necessary to the protection or furtherance of a legitimate business interest.” Bratt v. International Business Machines Corp., 392 Mass. 508, 512-13 (1984). “Massachusetts case law and the Restatement of Torts support the view that recklessness should be the minimum level of misconduct which results in the loss of a conditional privilege. Id. at 514. In Retailers Commercial Agency, Inc., petitioner, 342 Mass. 515, 521 (1961), the court held that a mercantile agency possesses a conditional privilege in communicating credit information to a client since these agencies fulfill a legitimate business need. Id. In addition, the court found that an agency can abuse the privilege and become liable for transmitting defamatory credit information if the plaintiff proves that the communication was motivated by malice or was an unnecessary, unreasonable, or excessive publication. Id.
The defendants contend that Shadowbrook should be given the same conditional privilege recognized in cases cited. See id. See also Galvin v. New York, N.H.&H.R.R., 341 Mass. 293, 297-98 (1960). Although the defendants argue that it is the business of the Trustees to provide for the effective administration of the Shadowbrook Condominium Association, and in conducting this business they must prepare an Agenda to allow member trustees to prepare for the evening’s discussion,' there are conflicting affidavits submitted by the parties that indicate individuals, not on the Board of Trustees, which are residents of the Shadowbrook complex, received the defamatory Agenda notice dated March 20, 1997. The defendants’ contention that each unit owner should have the conditional privilege to view the defamatory Agenda notice because of Article V, Section 5.10 of the Condo Trust is not well founded. The right of a unit owner to review the books, accounts and records of the trustees is not comparable to the allowance of publication in the Agenda notice of “bad debts” of unit owners and may be considered excessive publication. See Bratt, 392 Mass. at 514.
In addition, there is affidavit testimony that Richard Person, Chairman of the Board of Trustees, “always created two agendas.” One agenda, which included executive session information, was intended for the exclusive use of Trustees and not for distribution to unit owners. The second Agenda, distributed to unit owners, did not include the information concerning the executive session items. The court finds a disputed issue of material fact exists as to whether the defamatory Agenda was distributed to non-trustee, residents of Shadowbrook. Accordingly, summary judgment is denied as to Count XX.

E. Infliction of Emotional Distress (Counts XVI-XIX)

The elements of the tort of intentional infliction of emotional distress are: (1) an intentional act, (2) amounting to extreme and outrageous, (3) causing severe emotional distress to another, (4) by one not privileged to do so. Foley v. Polaroid Corp., 381 Mass. 545, 546-47 (1980).
In order to prevail under a common law theory of intentional infliction of emotional distress, the plaintiffs must show that the conduct was “extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community.” Agis v. Howard Johnson Co., 371 Mass. 140, 145 (1976). Here the plaintiffs allege that defendants’ conduct of preparing an Agenda meeting listing “(Bad Debt] * Papasodero * Others" and distribution of the same, constitutes liability for a claim of intentional or negligent infliction of emotional distress. These acts of publication and distribution cannot be construed as “extreme, outrageous, beyond all bounds of decency.” See Payton, 386 Mass. at 555. At best, the actions of the defendants in printing and distributing the notice *688 can be construed as, “mere insults, indignities, threats, annoyances, petty oppressions or other trivialities.” Tetrault v. Mahoney, Hawkes and Goldings, 425 Mass. 456, 466 (1997). As a result, this court finds as a matter of law that the conduct alleged cannot be deemed extreme and outrageous and the court grants summary judgment as to these motions.
In the absence of extreme and outrageous conduct, plaintiffs allege negligent infliction of emotional distress. The plaintiffs set forth their emotional injuries through their complaint. Therein, they attest that they were greatly injured in their feelings and that they suffered great, extreme and severe distress of mind. The plaintiffs, however, fail to cite to a particular date or time they experienced these symptoms. Furthermore, in contrast to Sullivan v. Boston Gas Co., 414 Mass. 129 (1993), the plaintiffs fail to offer any medical testimony to corroborate their personal experiences. See Lareau v. Page, 840 F.Sup. 920, 931 (1st Cir.) (discussing Payton v. Abbott Labs, 386 Mass. 540 (1982), as modified by Sullivan, 414 Mass. at 129, where the court held in order to state a cause of action for negligent infliction of emotional distress, the plaintiffs must, in addition to other elements, corroborate [their] mental distress claims with enough evidence of harm to convince a judge that [their] claims present a sufficient likelihood of genuineness to go to the jury). Here the plaintiffs have failed to do so.
Although a medical expert’s testimony is not necessary to establish claims for emotional distress, here plaintiff fails to provide any evidence to support Counts XVI through XIX. Therefore, the defendants’ motion attacking the sufficiency of said counts must be allowed. See Sullivan, 414 Mass, at 129.

F.Invasion of Privacy (Count XXI)

In their complaint, plaintiffs pursue an action for false light. Although well recognized in other jurisdictions and by the Restatement of Torts, the Supreme Judicial Court has noted in several decisions that false light is not recognized as a cause of action in Massachusetts. See ELM Medical Laboratory, Inc. v. Rko General, Inc., 403 Mass. 779, 787 (1989); Yovino v. Fish, 27 Mass.App.Ct. 442, 450 (1989). Accordingly, plaintiffs have no claim under false light.
Plaintiffs also claim that defendants made public disclosure of facts about the plaintiffs’ private lives. The right to enforce an equitable claim to privacy is found in G.L.c. 214, §1B, which states that “a person shall have a right against unreasonable, substantial or serious interference with his privacy.” In support of their claim, plaintiffs claim that the defendants published an Agenda notice regarding Papasodero’s bad debt and distributed the Agenda indiscriminately to individual tenants of Shadowbrook whether or not they had any financial interest in the affairs of Shadowbrook other than the payment of rent. In addition, Papasodero produced affidavits that suggest that Shadowbrook’s residents were given information regarding Papasodero’s debt situation, capable of being interpreted by Shadowbrook residents as an indication that Papasodero was having serious financial trouble. As there exists genuine issues of material fact as to damage to the privacy interests of the plaintiff, the court denies summary judgment as to Count XXI.
G. Loss of Consortium (Count XXV)
Papasodero also brings claims for loss of consortium against the defendants. A loss of consortium claim in Massachusetts is viewed as a separate and distinct cause of action, independent of the claim of the principal injured party. See Feltch v. General Rental Co., 383 Mass. 603, 607-08 (1986); Morgan v. Lalumiere, 22 Mass.App.Ct. 262, 271 (1986). Here, the loss of consortium claims of the Papasodero children are sustained because the defamation and invasion of privacy actions have survived. See Sena v. Commonwealth, 417 Mass. 250, 264 (1994).

H. Breach of Implied Covenant of Good Faith and Fair Dealing and Breach of Fiduciary Duty (Count XXIII)

Pursuant to Count XXIII, the plaintiffs seek to impose liability on the defendants, Shadowbrook and Thayer, pursuant to a breach of the implied covenant of good faith and fair dealing for printing the Agenda, as well as a claim that Shadowbrook denied plaintiffs access to its business records. “Every contract implies good faith and fair dealing between parties to it.” Anthony's Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 471 (1991). “The implied covenant of good faith and fair dealing provides that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.” Id. (citations omitted).
Here, the plaintiffs fail to adequately support their position that they have been denied access to business records and fail to establish how distribution of the Agenda notice amounted to a breach of an implied covenant of good faith and fair dealing. Unlike Anthony's, the defendants here were not in position to use their discretion to gain financial concessions from the plaintiffs. See id. At best, Thayer and Shadowbrook sought, through the Agenda notice, to collect common area fees previously owed to them under the trust agreement.

I.Violation of G.L.c. 93, §49 Fair Debt Collection Act; Violation of G.L.c. 93, §9 and Mass. Atty. Gen’l Regs., Debt Collection Practices Regulations 940 CMR 7.00-7.11; Violation of Fair Debt Collection Practices Act, 15US.C. §1692, et seq.

[5]

(1) Violation of G.L.c. 93, §49 Fair Debt Collection Act (Counts I-V)
Counts I, II, III, IV and V allege that defendants’ actions relative to the publication of the Agenda constitute a violation of the Massachusetts Fair Debt Collection Practices Act (“MFDCPA”). General Laws chapter 93, §49, states that “no one who is a creditor *689 or an attorney for a creditor of a natural person present or residing in Massachusetts who has incurred a debt primarily for personal, family or household purposes shall collect or attempt to collect such debt in an unfair, deceptive or unreasonable manner." The defendants cite to the holding in Franco v. Marcus, Civil No. 92-1684 (Hampden Superior Court April 3, 1995), in which the court determined that the MFDCPA does not apply to condominium assessments, reasoning that they are not a “debt primarily for personal, family or household purposes" within the meaning contemplated by the Act. Similarly, Staub v. Harris, 626 F.2d 278 (3rd Cir. 1980), likened condominium fees to local property taxes, which are also not covered under the Act, and reasoned that both assessments provide a general fund which pays for such non-personal purposes as common areas, security and roads.
The court agrees with this line of reasoning; the plaintiffs’ negligence claims under G.L.c. 93, §49, based solely on the defendants’ attempts to collect condominium fees, are fees for the common good of the association and therefore are not debts covered by this statute. As a matter of law, plaintiffs may not maintain a cause of action on Counts I-V.

(2) Violation of G.L.c. 93A, §9 and Mass. Atty. Gen’l Regs, and Debt Collection Practices Regulations 940 CMR 7.00-7.11 (Counts VI - X)

Pursuant to Counts VI, VII, VIII, IX and X, the plaintiffs claim that all of the defendants violated G.L.c. 93, §9, Massachusetts Attorney General Regulations and the Debt Collection Practices Regulations 940 CMR 7.00-7.11. The Debt Collection Practices Regulations 940 CMR 7.01 states that the purpose of the regulation “is to establish a standard by defining unfair and deceptive acts or practices, for the collection of debts from persons within the Commonwealth of Massachusetts.” In Murphy v. Marcus, Civil No. 87-7561 (Middlesex Superior Court August 26, 1992), this court held that G.L.c. 93A does not apply to actions involving trustees of condominium associations because such trustees “are not engaged in Trade or Commerce,” the trustees do not receive pay and volunteer their time to the condominium associations, and the sole purpose of the trustees of the condominium association is to provide for the effective administration of the condominium.
To determine whether parties to a transaction are engaged in trade or commerce, the court must consider the following: “(1) the nature of the transaction, (2) the character of the parties, (3) the activities participated in, and (4) whether the transaction was motivated by business or personal reasons.” Planned Parenthood Federation of America, Inc. v. Problem Pregnancy of Worcester, Inc., 398 Mass. 480, 491 (1986). See Clinton Place Condominium Trust v. Cruz, Civil No. 94-1368 (Worcester Super. Ct. May 31, 1995) (3 Mass. L. Rptr. 701). Here, the plaintiffs have failed to show how the trust had any purpose other than managing the common areas of the condominium including collection of the common area fees.[6] Thus, for the reasons stated supra. Counts VI through X are denied.

(3) Violation of Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. (Counts XI-XV)

Under Count XV, the plaintiffs brought an action against Thayer and Shadowbrook, along with individual employees of Thayer and Shadowbrook for violation of the Federal Fair Debt Collection Practices Act, 15 U.S.C. 1692. This action fails because it is barred by the one-year statute of limitations under 15 U.S.C. 1692k(d). Under 15 U.S.C. 1692k(d) an action must be brought “within one year from the date on which the violation occurs.” In this matter it is clear that plaintiffs’ claims are barred by the statute of limitations. The Agenda, which is attached to the complaint, is dated March 20, 1997. This action was not brought until March 20, 2000, three years to the date of the alleged violation. The plaintiffs’ claim that the statute has not run because of equitable tolling is without merit. The plaintiffs fail to provide sufficient evidence that defendants continue to violate this statute to the present.

ORDER

For the foregoing reasons, it is hereby ORDERED that the motions for summary judgment of the defendants Ellen Cunniff, Mathew Hall, Dwight Johnson, all as employees of Thayer, and defendants Janet Dale, Jeanne McBrine, Richard Person, Andrew Goodwin, Alan Glassman, Ann Brickley and Walter Skubisz, all as Trustees of Shadowbrook. be ALLOWED as to Counts II, IV, V, VII, IX, X, XII, XIV, XV, XVII and XIX. In addition, defendants Shadowbrook and Thayer’s motions for summary judgment are ALLOWED as to Counts I, III, VI, VIII, XI, XIII, XVI, XVIII, XXII, XXIII and XXIV. Finally, the defendants Shadowbrook and Thayer’s motions for summary judgment as to Counts XX, XXI, and XXV are DENIED.

S uperior Court Docket No. 96-00501A. The unit was sold at auction on January 29, 1998 to the highest bidder, who is the current owner/landlord, Dan Peters. Papasodero, following the auction in January 1998, remained in the condominium unit as a tenant of Dan Peters.

 On March 31, 1997, plaintiff, Paul Papasodero, filed a voluntary petition of bankruptcy with the U.S. Bankruptcy Court for the Central District of Massachusetts. On July 16, 1997, Papasodero filed an Adversary Proceeding with the same court against Shadowbrook Trust et al., alleging redress on theories of breach of contract, assault, discrimination, intentional interference with contractual relationship, intentional infliction of emotional distress, deceit, fraud and misrepresentation. On September 11, 1998, U.S. Bankruptcy *690 Judge James F. Queenan, Jr., granted defendants’ motion to dismiss the adversary proceedings.
The plaintiff has previously filed two complaints with the Massachusetts Commission Against Discrimination (“MCAD”), on March 31, 1999 and September 23, 1999, against the Board of Trustees of Shadowbrook and Thayer. Both Complaints were dismissed for lack of probable cause, the Commission finding that no discrimination or harassment was committed against Papasodero.
This court finds the plaintiffs’ prior causes of action in Bankruptcy Court and with MCAD do not preclude this litigation. Pursuant to this court’s knowledge of applicable bankruptcy procedures, Papasodero’s filing of chapter 7, no asset bankruptcy, will not preclude his ability to recover judgment under this action. In addition, neither of plaintiffs’ two prior claims with the MCAD dealt with the defamatory Agenda dated March 20, 1997, therefore res judicata does not apply.

 The motion as to Count XXII is ALLOWED, as G.L.c. 93, §69 and 940 C.M.R. 7 are inapplicable to the facts presented in this matter.

 For other cases holding that G.L.c. 93A does not apply to the relationship between a condominium trust and condominium unit owners, see Betzger v. Skyline Heights Condominium Trust, Civil No. 94-1613 (Norfolk Super. Ct. March 25, 1995), Trustees of The Harwichport Resort Club Condominium Trust v. Connor, Civil No. 93-1006 (Barnstable Super. Ct. January 25, 1995), Charles Bullfinch Condominium Association v. Frisco, Civ. No. 93-2202 (Suffolk Super. Ct. October 19, 1993), Murphy v. Marcus, Civil No. 87-7561 (Middlesex Super. Ct. August 26, 1992), and Bohan v. Phail, Civil No. 89-95 (Barnstable Super. Ct. August 31, 1990).